```
     H3nigayd ag                    DECISION

 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4            v.                                16 Cr. 361 CS

 5   TYRIN GAYLE, et al.,

 6                   Defendants.

 7   ------------------------------x

 8                                               March 23, 2017
                                                 2:15 p.m.
 9                                               White Plains, N.Y.

10   Before:

11                      HON. CATHY SEIBEL,

12                                         District Judge

13                           APPEARANCES

14   JOON H. KIM
          United States Attorney for the
15        Southern District of New York
     MAURENE COMEY
16        Assistant United States Attorney

17   SAMUEL BRAVERMAN
          Attorney for Defendant Gayle
18   JOHN WALLENSTEIN

19   NEIL CHECKMAN
          Attorney for Defendant Falls
20
     DANIEL HOCHHEISER
21        Attorney for Defendant Brown

22   THEODORE GREEN
          Attorney for Defendant Evans
23
     BRUCE KOFFSKY
24        Attorney for Defendant Boykin

25                               DECISION
```

H3nigayd ag                    DECISION

1        THE COURTROOM DEPUTY: United States v. Tyrin Gayle.

2        THE COURT: Have a seat, everyone. Good afternoon

3    Ms Comey.

4        MS COMEY: Good afternoon, your Honor.

5        THE COURT: And good afternoon to Mr. Green and

6    Mr. Evans. Mr. Koffsky and Mr. Boykin. Mr. Hochheiser and

7    Mr. Brown. Mr. Checkman and Mr. Falls. Mr. Wallenstein, you

8    are sitting in for Mr. Braverman for Mr. Gayle and you are also

9    representing Mr. Warren.

10        MR. WALLENSTEIN: Correct, your Honor.

11        THE COURT: I've got motions from everybody I think

12   which I want to rule on. And I want to start with the motions

13   to suppress which come from Mr. Brown and Mr. Evans.

14        Let me ask you, Mr. Green and Mr. Hochheiser, the

15   government's of the view that the videos provide sufficient

16   evidence of the circumstances and that we don't need live

17   testimony. I assume you're not, you don't challenge the

18   authenticity of the videos, so I will treat them as though they

19   were the government's case at a hearing. Do you have any

20   evidence you'd like to put on?

21        MR. GREEN: Well, as for Mr. Evans, I may offer

22   testimony from the defendant at a hearing. I submitted an

23   affidavit.

24        THE COURT: Call your witness, if you want to.

25        MR. GREEN: I didn't realize we were having a hearing

1  now.
2          THE COURT:  I guess what I'm asking you is are you
3  putting on any testimony?
4          MR. GREEN:  Yes, I do plan to put testimony on at a
5  hearing.
6          THE COURT:  Are you saying you're not prepared to do
7  it today?
8          MR. GREEN:  Yes.  My expectation was that the Court
9  would schedule a hearing today.
10          THE COURT:  I will schedule a hearing if you're not
11  prepared to do it today.  The government isn't putting on
12  anything else?
13          MS COMEY:  That's correct, your Honor.
14          THE COURT:  And would you care to enlighten me about
15  what you you would like to put on evidence regarding that's not
16  clear on the video, or are you going to be challenging the
17  accuracy of the video?
18          MR. GREEN:  I'm not challenging the accuracy of the
19  video.  I'll probably be relying on the video a little bit.
20  The issue is whether Mr. Evans, the only factual issue is
21  whether Mr. Evans read and understood the rights before he
22  signed the form that the agent asked him to sign.  So that's in
23  line with the declaration that was submitted by Mr. Evans.
24          THE COURT:  Which I will obviously consider.  But if
25  you want to put on evidence that's fine.

1           What about you Mr. Hochheiser?

2           MR. HOCHHEISER:  I would take essentially the same
3   position.  Mine might be slightly different because there's
4   another issue where the government has asked in the alternative
5   that you rely on a pre-video recitation of rights in the car
6   ride over to the station.

7           THE COURT:  I think the way I read what the government
8   said was if I wasn't persuaded by what was on the video and
9   that we needed to go there that they would put on evidence
10  regarding that.

11          MR. HOCHHEISER:  I think it would be useful for your
12  Honor to hear testimony from my client on the issue of whether
13  he knowingly, intelligently and voluntarily waived his rights,
14  which I think is, obviously, as I stated in the motion, in
15  question given how the events transpired on the video.

16          THE COURT: All right.  That's fine.  Then I won't
17  rule on those today.  How about Monday for the hearing?  Can I
18  do that, Alice?  Can everybody do it Monday?

19          MR. HOCHHEISER:  I'd ask for a little more time.  My
20  client is incarcerated at the MCC.  I'd like to meet with him
21  before the hearing.

22          THE COURT:  How about Thursday?  I'm picking randomly.
23  I'd like to get a hearing date soon.  What do we got?  How
24  about next Friday the 31st?

25          MR. GREEN:  That's all right with me, Judge.

1          MR. HOCHHEISER:  I'll be here anyway, Judge, on a
2     different case.
3          THE COURT:  You'll be in front of me on a different
4     case on Friday the 31st?
5          MR. HOCHHEISER:  Yes.
6          THE COURT:  We don't have anything on our calendar but
7     that could be our mistake.  Let's plan on doing this.  Would
8     that work for you, Ms Comey?
9          MS COMEY:  Yes, your Honor.  Thank you.
10         THE COURT:  If you think you'll be calling somebody in
11    rebuttal, have him or her ready.
12         MS COMEY:  Yes, your Honor.
13         THE COURT:  All right.  That shortens our agenda for
14    today.
15         MS COMEY:  May I ask what time you'd like to start on
16    Friday?
17         THE COURT:  Apparently I have something at ten
18    o'clock.
19         MR. HOCHHEISER:  I think it's on for ten o'clock.
20    Status conference.
21         THE COURT:  All right. 10:15.
22         MR. GREEN:  Is that for both defendants?
23         THE COURT:  Yes.  I guess we could do one in the
24    morning or one in the afternoon or back-to-back.  I don't
25    imagine it's going to take very long.

1           MR. GREEN:  I'll show up at 10:15.

2           THE COURT:  If you don't mind we could probably get

3   them both out of the way in the morning.

4           Apart from those motions, the others are, it seems to

5   me, purely legal issues.  The disclosure motions, this is the

6   dance we go through in every case.  Defense lawyers push the

7   global replace in their word processor, the government does the

8   same, and I do the same.

9           With respect to the application for disclosure of

10  *Brady* material, the government has to comply with *Brady*

11  material, it knows it has to comply with *Brady*.  Beyond that I

12  don't know what you want me to do for you.

13          With respect to the motion for disclosure of

14  co-defendants' post-arrest statements for purposes of *Bruton*,

15  obviously any such statements that the government may offer

16  that implicate co-defendants will have to be Brutonized.  But

17  production is premature at this stage.  We don't know who is

18  going to trial and whose statements may be offered.  I don't

19  see any reason not to do in this case what everybody does in

20  every case, which is the government should either disclose

21  those statements to defense counsel along with proposed

22  redactions that it believes will meet the requirements of

23  *Bruton* and *Bruton*'s progeny, either a week before motions *in*

24  *limine* are due so that the defendants can make motions *in*

25  *limine*, or the government should make a motion *in limine* itself

H3nigayd ag                    DECISION

1    seeking admission of any such statements and giving proposed
2    redactions.
3            Bill of particulars.  The law is very clear, I won't
4    repeat it.  It's accurately stated in the parties' briefs.
5    Almost everything the defendants are asking is evidentiary
6    detail to which they know they're not entitled and they know
7    I'm not going to give it to them.  The defendants have an
8    abundance of materials that they can use to prepare for trial.
9            There are a couple of things I'm going to direct.  (a)
10   I do think the government is required to at some reasonable
11   point before trial identify co-conspirators so that the
12   defendants have some idea whose statements may be admitted
13   against them as co-conspirator statements.  And there are a few
14   other things I'm going to direct the government to disclose,
15   not because they are required but because I think they will
16   assist in evaluating the case and in trial prep and I don't
17   think the government minds giving this information.  It may
18   well have already given it.  I don't think the government minds
19   giving this information as long as it doesn't restrict the
20   government's proof at trial and it's not going to restrict the
21   government's proof at trial.
22           What I would like the government to do is specify, if
23   it hasn't already and if the information isn't otherwise
24   available in discovery, any CI or undercover drug sales and
25   same with respect to any gun transactions involving an

1  undercover or a CI.  I suspect the discovery already makes that
2  clear but if it doesn't the government should make it clear.
3  And also, if the government is planning on proving up any use
4  of a weapon or brandishing of a weapon, in particular
5  confrontations or particular shootings that the government
6  knows about, it should specify what they are.  The government
7  is not going to be held to that.  If two days before the trial
8  a witness tells the government about a shooting for the first
9  time, it's not going to be inadmissible because it wasn't
10 previously disclosed.  But to the extent the government now is
11 aware of specific instances where one of these defendants used
12 or brandished a weapon, it should disclose it.  And as we get
13 closer to trial I will ask the government to tell any defendant
14 who asks, and this may have already happened, whether the
15 government's theory at trial is going to be that the person
16 personally held the weapon or aided and abetted or whether it's
17 going to be a Pinkerton theory.  Again I don't think this is
18 required.  I think what the defendants are asking for is
19 essentially what the witnesses are going to say about their
20 drug activities or drug possession and they're just not
21 entitled to that yet.  They will get it in advance of trial
22 because I've ordered early disclosure of the 3500.
23          So why don't we say within two weeks the government
24 will disclose the few things that I've directed but otherwise
25 the motion for particulars is denied.

1     As to the severance motions, again the parties
2  accurately state the law in their briefs.  I'm not going to
3  repeat it.  All defendants are charged together in the
4  narcotics conspiracy.  The fact that some are charged in the
5  racketeering conspiracy and some aren't and that some are
6  alleged to have committed acts of violence and some aren't is
7  insufficient to warrant severance under Second Circuit law.
8  The only argument defendants advance is spillover prejudice, an
9  argument that almost invariably fails, and for good reason, as
10 the Circuit recognized in U.S. v. Chang An-Lo, 851 F.2d 547,
11 557.  Differing levels of culpability of proof are inevitable
12 in any multidefendant case and don't warrant separate trials
13 absent something really prejudicial.  The court made clear in
14 Locasio, 6 F.3d 924, 947 that there is no constitutional
15 problem with trying even the marginal defendants along with the
16 most heavily involved defendants and that spillover prejudice
17 doesn't warrant a severance absent prejudice so serious as to
18 amount to a miscarriage of justice.  U.S. v. Aloi, 511 F.2d
19 585, 598.

20     The three defendants who have made this motion are
21 Brown, Falls and Boykin.  As to Brown and Falls, they have
22 almost no leg to stand on.  While they are not charged with
23 having personally committed acts of violence they are charged
24 in the RICO conspiracy count and the acts of violence allegedly
25 committed by the co-defendants are admissible against them on

that count as evidence of the existence of the enterprise and of its nature, goals and actions.  See U.S. v. DiNome, 954 F.2d 839, 843-44; U.S. v. Diaz, 176 F.3d 52, 103; and U.S. v. Brady, 26 F.3d 282, 287.  So even if I were to sever, all the evidence that those defendants are concerned about would still be admissible against them.  It so happens the government represents that there will be evidence that Brown and Falls participated in or condoned violence themselves and so the risk of them being unfairly tarred with the actions of others is reduced.  But even if that were not the case there's no basis for severance for the RICO defendants.

Boykin is not named in the RICO on so he has a somewhat stronger argument, but it is not an argument strong enough to warrant severance.  There is a great deal of overlap.  And it's apparent from the indictment, apart from the government's representations, that there is a great deal of overlap between the proof of the narcotics conspiracy and the proof of the RICO conspiracy.  And likewise all defendants are charged in a 924(c) count relating to the narcotics conspiracy.  So evidence of that count will include evidence of violence to the extent those acts further the drug conspiracy.  And any acts of violence or firearms possession that furthers the drug conspiracy would be admissible against Boykin on the drug conspiracy count because it would tend to show the existence and methods of the conspiracy.  See U.S. v. Salameh, 152 F.3d

88, 111.  So if I were to sever, that would result in enormous duplication of evidence and inefficiency and much of the evidence would come in at a separate trial anyway.  There may well be some evidence that wouldn't come in at a separate trial, but that mere fact isn't enough.  It has to be evidence that would really result in a miscarriage of justice.  And I just don't see that here.  The jury is going to be able to keep straight what Mr. Boykin is alleged to have done versus other people.  Similarly the risk of spillover prejudice is reduced if, as the government represents, the evidence against Mr. Boykin is going to include him carrying a gun and his awareness that even though he's not in the RICO he was dealing drugs on turf controlled by the RICO enterprise.

In response to the government, Mr. Boykin has not pointed to any specific act of violence that he believes would be admissible only on the RICO count and not on the narcotics conspiracy count, nor has any other defendant moving for severance responded to the government's arguments by pointing to any specific act that would be admissible only against co-defendants but not as to him.  But if it turns out there is sufficient evidence the relevant defendants can seek a limiting instruction that it shouldn't be considered against them.  They just need to be sure to tee it up in time for us to discuss it before the evidence is offered.  With that precaution of a limiting instruction and in light of the fact that the case is

H3nigayd ag                   DECISION

not so complicated that the jury wouldn't be able to follow a limiting instruction, the risk of unfair prejudice will be minimized and the efficiencies of a joint trial will be preserved.  See U.S. v. Devillio, 983 F.2d 1185, 1192-3; and U.S. v. Hernandez, 85 F.3d 1023, 1029-30; U.S. v. Rosa, 11 F.3d 315, 341-42; U.S. v. Lasanta, 978 F.2d 1300, 1306, which was abrogated on other grounds by Florida v. White, 526 U.S. 559; and U.S. v. Potamitis, 739 F.2d 784, 790.

Certain defendants have made a motion to dismiss the 924(c) counts on the theory that that statute is void for vagueness along the lines of the Johnson case, 135 S.Ct. 2551. They acknowledge that the Second Circuit has already rejected that theory in Hill v. U.S., 832 F.3d 135.  They make the motion only to preserve the issue.  So I deny the motion for the reasons stated by the government and under the authority of Hill and the issue is preserved.

Apart from the suppression motions, the motion that's left is Mr. Brown's motion to dismiss Counts 1, 5 and 9 under the Juvenile Delinquency Act.  Anything more you want to say on that Mr. Hochheiser?

MR. HOCHHEISER:  No.  I'll stand by the position I have outlined in my papers.

THE COURT:  So the argument is that Counts 1, 5 and 9 have to be dismissed because Mr. Brown did not do anything in connection with those counts after his 18th birthday which was

1    April 26, 2016.  Each of those counts, as the government points
2    out, charges a continuing offense.  And the indictment clearly
3    charges that the conduct continued into May 2016.  If as the
4    evidence plays out the government can't back up those
5    allegations at trial, the defendant will have a good Rule 29
6    motion.  And if there is evidence but it's thin the defendant
7    will have a good jury argument.  But at this point essentially
8    for the reasons stated by the government I can't dismiss
9    anything as a matter of law.  The allegation is the conduct
10   continued into May.  We'll have to see.
11          The government is also correct that evidence of
12   conduct before the defendant's 18th birthday is admissible in
13   connection with a continuing offense that continues past the
14   defendant's 18th birthday, as is alleged here.  See U.S. v.
15   Wong 40 F.3d 1347, 1367.  I do think it's the government's
16   burden to prove that the defendant ratified his participation
17   in the offenses on or after his 18th birthday.  I don't think
18   it's the defendant's burden to prove that he withdrew or ceased
19   his participation.  But that's a factual question to be raised
20   at trial not by a pretrial hearing.  U.S. v. Welch, 15 F.3d
21   1202, 1208-1210.
22          Am I right that that covers everything except the
23   suppression motions?
24          MS COMEY:  I believe so, your Honor.  Yes.
25          THE COURT:  All right.  So as to Mr. Brown, the issue

H3nigayd ag                DECISION

1  is essentially going to be whether the agent's statement about
2  "you're not going anywhere" or any other circumstances render
3  Mr. Brown's statements, render his waiver less than knowing and
4  voluntary.  And as to Mr. Evans, the issue is going to be the
5  agent's failure to include all the required warnings, what
6  effect that should have on the admissibility of the statement,
7  and whether if the statement is inadmissible that also requires
8  suppression of the evidence obtained via the defendant's
9  consent to search the phone.  And we will deal with those next
10 Friday.
11         Anything more we should do now?  All right.  And the
12 few things I've ordered the government to disclose you can do
13 within two weeks, Ms Comey?
14         MS COMEY:  Yes, your Honor.
15         THE COURT:  All right.  So it seems like a long way
16 off to trial but I don't think we have anything more scheduled
17 until, apart from the suppression hearing, until after motions
18 *in limine*, right?
19         MS COMEY:  I believe that's correct, your Honor.  The
20 final pretrial conference as I have it is August 28th.
21         THE COURT:  I'll see Mr. Brown and Mr. Evans on Friday
22 and I will see everybody else in August unless something comes
23 up.  Thank you.
24         (Proceedings adjourned; 2:40 p.m.)
25