170918gayle1                    Trial

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA

4            v.                          S8 16 Cr. 361(CS)

5   TYRIN GAYLE,

6               Defendant.

7   ------------------------------x
                                         United States Courthouse
8                                        White Plains, N.Y.
                                         September 18, 2017
9                                        1:10 p.m.

10

11  Before:

12              THE HONORABLE CATHY SEIBEL,

                                         District Judge
13

14                      APPEARANCES

15

    JOON H. KIM
16       Acting United States Attorney for the
         Southern District of New York
17  MAURENE COMEY
    LAUREN SCHORR
18  JACQUELINE KELLY
         Assistant United States Attorneys
19

    FASULO, BRAVERMAN & DiMAGGIO, LLP
20       Attorneys for Defendant Tyrin Gayle
    SAM BRAVERMAN
21  LOUIS FASULO
    MICHAEL GIORDANO
22

23

24

25

170918gayle1                    Trial

1              (In open court; case called)

2              THE COURT:  Did we make whatever the change was?

3              THE CLERK:  There were no changes.

4              THE COURT:  Oh.

5              THE CLERK:  We heard there were no changes.

6              MS. COMEY:  One thing did come up this morning while

7    we were preparing this exhibits.

8              The surveillance video, which is Exhibit 213 from

9    February 21st, requires a special software to play.  That

10   software is not available on the laptop that we have to send

11   back to the jury room.  So, for that reason, that video alone

12   we can only play out here in the courtroom.

13             THE COURT:  Is that the white car going back and

14   forth?

15             MS. COMEY:  Yes, your Honor.

16             THE COURT:  In other words, the one that they're

17   probably really going to want to see.

18             MS. COMEY:  Yes, your Honor.

19             THE COURT:  That's Exhibit 213, so I'll just tell them

20   what you just said.

21             Okay.  Let's get the jury in.

22             (Jury present)

23             THE COURT:  Good afternoon, everyone.  I hope you-all

24   had a good weekend.

25             It is now time for me to give you your instructions on

170918gayle1                    Trial

1   the law.  They're sort of lengthy.  By statute, I have to give

2   them to you verbally, but I think it's a lot of information to

3   take in through the ears.  So, I'm going to hand out copies so

4   you can read along with me.

5          Before I do that, though, one ground rule, which is, I

6   ask that you stay on the same page with me literally.  If you

7   miss something and want to go back, you'll have time to do that

8   afterwards.

9          Please don't read ahead, because the one thing I think

10  is a recipe for confusion is if what you're hearing through

11  your ears and seeing with your eyes are two different things.

12  Let's read through it together.  And you'll be able to keep

13  copies of these instructions and refer to them during your

14  deliberations.

15         And now I will hand out copies to everyone.  Are they

16  still warm?

17         A JUROR:  Yes.

18         THE COURT:  Feels good.  I know we should put space

19  heaters in the jury box.  All right.

20         It seems like a lot of information.  It is a lot of

21  information, but as I said, you'll be able to refer to it in

22  the jury room.  And you'll also each get a copy of a verdict

23  form, which will list the questions you have to answer and I

24  think will help you organize your deliberations.

25         Don't freak out if it seems like a lot or if you don't

170918gayle1                    Trial

1   get something on the first read-through.

2          Starting on page one, Members of the Jury, we have

3   almost reached that point where you are about to begin your

4   final function as jurors, which, as you all appreciate, is one

5   of the most important duties of citizenship in this country.

6   My instructions to you will be in four parts.

7          First, I will give some introductory instructions

8   about the role of the Court and the jury, and about the

9   presumption of innocence and the government's burden of proof.

10  Second, I will give you instructions concerning the evaluation

11  of evidence.  Third, I will describe the charges and the law

12  governing those charges, which you will apply to the facts as

13  you find them to be established by the proof.  The fourth and

14  final section of these instructions will relate to your

15  deliberations.

16         It is my duty to instruct you as to the law, and it is

17  your duty to accept these instructions of law and apply them to

18  the facts as you determine them.

19         A JUROR:  Pardon me, Judge. I think I have all the

20  verdict sheets here.

21         THE COURT:  So you do.

22         THE LAW CLERK:  My apologies.

23         THE COURT:  All right.  You want to catch up.  We're

24  just at the middle of page one.  Sorry about that.

25         It's my duty to instruct you as to the law, and it's

170918gayle1                    Trial

1   your duty to accept these instructions of law and apply them to

2   the facts as you determine them.

3       If an attorney stated a legal principal different from

4   any that I state to you in my instructions, it is my

5   instructions you must follow.  You should not single out any

6   instruction as alone stating the law, but should consider my

7   instructions as a whole when you retire to deliberate.  You

8   should not be concerned about the wisdom of any rule that I

9   state.  Regardless of any opinion you may have about what the

10  law may be or ought to be.  It would be a violation of your

11  oath to base your verdict on any view of the law other than

12  that which I give you.

13      You, the Members of the Jury, are the sole and

14  exclusive judges of the facts.  You pass on the evidence,

15  determine the credibility of witnesses, resolve such conflicts

16  as there may be in the testimony, draw whatever reasonable

17  inferences you decide to draw from the facts as you determine

18  them, and determine the weight of the evidence.  In doing so,

19  remember that you took an oath to render judgment impartially

20  and fairly, based solely on the evidence and the applicable

21  law.

22      The fact that the prosecution is brought in the name

23  of the United States of America entitles the government to no

24  greater consideration than that given to any other party to

25  this litigation.  By the same token, the government is entitled

170918gayle1                    Trial

1    to no less consideration.

2         The defendant has pleaded not guilty to the charges

3    against him.  As a result of a plea of not guilty, the burden

4    is on the government to prove guilt beyond a reasonable doubt

5    as to each charge.  This burden never shifts to the defendant

6    for the simple reason that the law never imposes upon a

7    defendant in a criminal case the burden or duty of testifying

8    or calling any witness or locating or producing any evidence.

9         The law presumes the defendant to be innocent of each

10   of the charges against him.  This means the defendant began the

11   trial here with a clean slate.  The presumption of innocence

12   alone is sufficient to acquit, unless you, as jurors, are

13   unanimously convinced beyond a reasonable doubt of the

14   defendant's guilt.  This presumption was with the defendant

15   when the trial began, remains with the defendant now, and will

16   remain with the defendant during your deliberations, unless and

17   until you are convinced that the government has proven the

18   defendant's guilt beyond a reasonable doubt.

19         The question that naturally arises is, "What is a

20   reasonable doubt?"  What does that term mean?  The words almost

21   define themselves.  It is a doubt based on reason and arising

22   out of the evidence in the case or the lack of evidence.  It is

23   a doubt that a reasonable person has after carefully weighing

24   all of the evidence in the case.

25         Proof beyond a reasonable doubt must therefore be of

170918gayle1                    Trial

1   such a convincing character, that a reasonable person would not

2   hesitate to rely on it in making an important decision.

3   Reasonable doubt is a doubt that appeals to your reason, your

4   judgment, your experience, and your common sense.

5           If, after a fair and impartial consideration of all of

6   the evidence, you can candidly and honestly say that you are

7   not satisfied with the guilt of the defendant, that you do not

8   have an abiding and firm belief that the government has proven

9   the defendant's guilt – in other words, if you have such a

10  doubt as would reasonably cause a prudent person to hesitate in

11  acting in matters of importance in his or her own affairs –

12  then you have a reasonable doubt, and in that circumstance, it

13  is your duty to acquit.

14          If, on the other hand -- sorry.

15          On the other hand, if, after a fair and impartial

16  consideration of all the evidence as applied to each element of

17  each count, you can candidly and honestly say that you do have

18  an abiding and firm belief that the government has proven the

19  defendant's guilt – such a belief as a prudent person would be

20  willing to act upon in important matters in the personal

21  affairs of his or her life – then you have no reasonable doubt,

22  and under such circumstances, it is your duty to convict.

23          Reasonable doubt is not whim or speculation.  It is

24  not an excuse to avoid the performance of an unpleasant duty.

25  Nor is it sympathy for the defendant.  Beyond a reasonable

170918gayle1                    Trial

1   doubt does not mean a positive certainty, or beyond all

2   possible doubt.  After all, it is virtually impossible for a

3   person to be absolutely and completely convinced of any

4   contested fact that by its nature is not subject to

5   mathematical proof and certainty.  As a result, the law in

6   criminal cases is that it is sufficient if the guilt of the

7   defendant is established beyond a reasonable doubt, not beyond

8   all possible doubt.

9          You are to consider only the evidence in the case.

10  The evidence in this case is the sworn testimony of the

11  witnesses, the exhibits received in evidence, and any

12  stipulations to which the parties have agreed.

13         A stipulation is simply an agreement between parties

14  as to what certain facts were or what the testimony would be if

15  certain people testified before you.  The stipulations are the

16  same for your purposes as the presentation of live testimony.

17  You should be consider the weight to be given such evidence,

18  just as you would any other evidence.

19         It is for you alone to decide the weight, if any, to

20  be given to the testimony and stipulations you have heard and

21  the exhibits you have seen.  Testimony that I have excluded or

22  stricken is not evidence and may not be considered by you in

23  rendering your verdict.  If testimony was received only for a

24  limited purpose, you must follow that limiting instruction and

25  consider the evidence only for the purpose I indicated.

170918gayle1                    Trial

1        You are not to consider as evidence questions asked by

2   the lawyers.  It is the witnesses' answers that are the

3   evidence, not the questions.  Arguments by the attorneys are

4   not evidence because the attorneys are not witnesses.  What

5   they have said to you in their opening statements and their

6   summations is intended to help you understand the evidence to

7   reach your verdict.  If, however, your recollection of the

8   evidence differs from the statements made by the advocates in

9   their opening statements or summations, it is your recollection

10  that controls.

11       Finally, any statements or rulings that I may have

12  made do not constitute evidence.  Because you are the sole and

13  exclusive judges of the facts, I do not mean to indicate any

14  opinion as to what the facts are or what the verdict should be.

15  The rulings I have made during the trial are not any indication

16  of my views.  Also, you should not draw any inference from the

17  fact that I may, on occasion, have asked certain questions of

18  witnesses.  Those questions were intended only to clarify or

19  expedite, and are not an indication of my view of the evidence.

20  In short, if anything I have said or done seemed to you to

21  indicate an opinion relating to any matter you need to

22  consider, you must disregard it.

23       You are to make your decisions based on all of the

24  evidence in the case.  It does not matter which side called the

25  witness or introduced an exhibit; all the evidence should be

170918gayle1                    Trial

1     weighed.  But I remind you that the defendant has no obligation
2     to introduce any evidence.
3            There are two types of evidence you may properly
4     consider in reaching your verdict.  One type of evidence is
5     direct evidence.  One kind of direct evidence is a
6     witness' testimony about something he or she knows by virtue of
7     his or her – should be in there – own senses – something the
8     witness has seen, felt, touched or heard.  Direct evidence may
9     also be in the form of an exhibit.
10           The other type of evidence is circumstantial evidence.
11    Circumstantial evidence is evidence that tends to prove one
12    fact by proof of other facts.  Here is a simple example of
13    circumstantial evidence:
14           Assume that when you came into the courthouse this
15    morning, the sun was shining and it was a nice day.  Assume
16    that the courtroom blinds are drawn and you cannot look
17    outside.  As you are sitting here, someone walks in with an
18    umbrella that is dripping wet.  Somebody else then walks in
19    with a raincoat that is also dripping wet.  You cannot look
20    outside the courtroom and you cannot see whether or not it is
21    raining, so you have no direct evidence of that fact, but on
22    the combination of the facts that I've asked you to assume, it
23    would be reasonable and logical for you to conclude that
24    between the time you arrived at the courthouse and the time
25    these people walked in, it had started to rain.

170918gayle1                    Trial

1            That is all there is to circumstantial evidence.  You

2    infer on the basis of reason, experience, and common sense an

3    established fact from the existence or the nonexistence of some

4    other fact.

5            Many facts, such as a person's state of mind, can only

6    rarely be proved by direct evidence.  Circumstantial evidence

7    is of no less value than direct evidence.  The law makes no

8    distinction between the two, but simply requires that before

9    convicting the defendant, you, the jury, must be satisfied of

10   the defendant's guilt beyond a reasonable doubt from all the

11   evidence in the case.

12           I've used the term "infer," and the lawyers in their

13   arguments have asked you to draw inferences.  When you draw an

14   inference, you conclude, from one or more established facts,

15   that another fact exists, and you do so on the basis of your

16   reason, experience, and common sense.  The process of drawing

17   inferences from facts in evidence is not a matter of guesswork,

18   suspicion, or speculation.  An inference is a reasoned, logical

19   deduction or conclusion that you, the jury may draw – but are

20   not required to draw – from the facts which have been

21   established by either direct or circumstantial evidence.  In

22   considering inferences, you should use your common sense and

23   draw from the facts that you find to be proven whatever

24   reasonable inferences you find to be justified in light of your

25   experience.  As I will explain in more detail later, however,

170918gayle1                    Trial

1   you must not infer that the defendant is guilty of criminal

2   conduct merely because he associates with others who may have

3   engaged in such conduct, even if he knows that a crime has

4   occurred.

5           You have heard witnesses testify during trial

6   regarding the chain of custody of certain evidence, including

7   issues relating to the collection and preservation of evidence,

8   and the procedures followed by particular agencies and

9   technicians.  With respect to cellphones, you have heard

10  evidence regarding the extraction of information from

11  cellphones, the placement of that information on other media,

12  and the generation of reports of the information on that media.

13  I have admitted these exhibits, including the media and

14  corresponding reports into evidence, but the integrity of the

15  chain of custody, along with any weaknesses or gaps you may

16  perceive in the chain of custody, is something you may consider

17  in evaluating the weight, if any, to be given to this evidence.

18          Now, for the important subject of evaluating

19  testimony.  How do you evaluate the credibility or

20  believability of the witnesses?  The answer is that you use

21  your plain, common sense.  There is no magic formula by which

22  you can evaluate testimony.  You should use the same tests for

23  truthfulness that you would use in determining matters of

24  importance in your everyday lives.  You should ask yourselves:

25  Did the witness impress you as honest, open, and candid, or was

170918gayle1                    Trial

1    the witness evasive and edgy as if hiding something?  How did

2    he or she appear - that is, his or her bearing, behavior,

3    manner, and appearance while testifying?  How responsive was

4    the witness to the questions asked on direct examination and on

5    cross-examination?  You should consider the opportunity the

6    witness had to see, hear, and know about the things about which

7    he or she testified; the accuracy of his or her memory; his or

8    her candor or lack of candor; his or her intelligence; the

9    reasonableness and probability of his or her testimony; its

10   consistency or lack of consistency with other credible

11   evidence; and its corroboration or lack of corroboration by

12   other credible evidence.

13          In short, in deciding credibility, you should size up

14   the witness in light of his or her demeanor, the explanations

15   given, and all of the other evidence in the case.  Use your

16   common sense, good judgment, and life experience.

17          Few people recall every detail of every event

18   precisely the same way.  A witness may be inaccurate,

19   contradictory, and even untruthful in some respects, and yet

20   entirely believable and truthful in other respects.  It is for

21   you to determine whether such inconsistencies are significant

22   or inconsequential.

23          If you find that a witness intentionally testified

24   falsely, that is always a matter of importance you should weigh

25   carefully.  If you find that any witness has willfully

170918gayle1                    Trial

1   testified falsely as to any material fact – that is, as to an

2   important matter – the law permits you to disregard completely

3   the entire testimony of that witness upon the principal that

4   one who testifies falsely about one material fact is likely to

5   testify falsely about everything.  You are not required,

6   however, to consider such a witness as totally unbelievable.

7   You may accept so much of his or her testimony as you deem true

8   and disregard what you feel is false.

9        You are not required to accept testimony even though

10  the testimony is uncontradicted and the witness' testimony is

11  not challenged.  You may decide because of the witness' bearing

12  or demeanor or because of the inherent improbability of

13  the testimony, or for other reasons sufficient to yourselves,

14  that the testimony is not worthy of belief.  On the other hand,

15  you may find, because of a witness' bearing and demeanor, the

16  plausibility of the testimony, and the other evidence in the

17  case, that the witness is truthful.

18       By the processes that I've just described to you, you,

19  as the sole judges of the facts, decide which of the witnesses

20  you will believe, what portion of their testimony you accept,

21  and what weight you will give to it.

22       In deciding whether to believe a witness, you should

23  also specifically note any evidence of bias, hostility, or

24  affection that the witness may have toward one of the parties.

25  Likewise, you should consider evidence of any other interest or

170918gayle1                    Trial

1    motive that the witness may have in cooperating or not

2    cooperating with a particular party.  If you find any such

3    bias, hostility, affection, interest, or motive, you must then

4    consider whether it affected or colored the witness' testimony.

5            You should also take into account any evidence that a

6    witness may benefit or suffer in some way from the outcome of

7    the case.  Such interest in the outcome may create a motive to

8    testify falsely and may sway a witness to testify in a way that

9    advances his or her own interests.  Therefore, if you find that

10   any witness whose testimony you are considering may have an

11   interest in the outcome of this trial, then you should bear

12   that factor in find when evaluating the credibility of his or

13   her testimony and accept it with great care.

14           Keep in mind, though, that it does not automatically

15   follow that testimony given by an interested witness is to be

16   disbelieved.  There are people who, no matter what their

17   interest in the outcome of the case may be, would not testify

18   falsely.  It is for you to decide based on your own perceptions

19   and common sense to what extent, if at all, the witness' bias

20   or interest has affected his or her testimony.  You are not

21   required to disbelieve an interested witness.  You may accept

22   as much of his or her testimony as you deem reliable and reject

23   as much as you deem unworthy of acceptance.

24           You have heard several witnesses who testified that

25   they were actually involved in certain of the crimes charged in

170918gayle1                    Trial

1   the indictment or in other serious crimes.

2          You may properly consider the testimony of such

3   accomplices or cooperating witnesses – to whom I will refer as

4   cooperators.  The government frequently must rely on

5   the testimony of cooperators who admit participating in alleged

6   crimes to detect and prosecute wrongdoers.

7          Because of the possible interest a cooperator may have

8   in testifying, however, his testimony – in this case, they were

9   all "hes" – his testimony should be scrutinized with special

10  care and caution.  The fact that a witness is a cooperator can

11  be considered by you as bearing upon his credibility.  It does

12  not follow, however, simply because a person has admitted to

13  participating in one or more crimes, that he is incapable of

14  giving a truthful version of what happened.

15         Like the testimony of any other witness, cooperating

16  witness testimony should be given such weight as it deserves in

17  light of the facts and circumstances before you, taking into

18  account the witness' demeanor and candor, the strength and

19  accuracy of his recollection, his background, and the extent to

20  which the testimony is or is not corroborated by other evidence

21  in the case.

22         You may consider whether a cooperator – like any other

23  witness called in this case – has an interest in the outcome of

24  the case or a motive to testify falsely, and if so, whether it

25  has affected his testimony.

170918gayle1                    Trial

1          In evaluating the testimony of cooperating witnesses,

2    you should ask yourselves whether they would or believe they

3    would benefit more by lying or by telling the truth.  Was

4    their testimony made up in any way because they believed or

5    hoped that they would somehow receive favorable treatment by

6    testifying falsely?  Or did they believe that their interests

7    would best be served by testifying truthfully?  If you believe

8    that the witness was motivated by hopes of personal gain, was

9    the motivation one that would cause him to lie or was it one

10   that would cause him to tell the truth?  Did this motivation

11   color his testimony?

12         You heard testimony about various agreements between

13   the government and the witnesses.  You should not be concerned

14   with why the government made an agreement with a witness.  Your

15   sole concern is whether a witness has given truthful testimony

16   here in this courtroom before you.  In making that

17   determination, you may consider the terms of the agreement

18   between the witness and the government, and all the surrounding

19   facts and circumstances.

20         If you find that the testimony was false, you should

21   reject it.  If, however, after a cautious and careful

22   examination of a cooperator's testimony and demeanor on the

23   witness stand, you are satisfied that the witness told the

24   truth, you should accept it as credible and act on it

25   accordingly.

170918gayle1                    Trial

1          As with any witness, let me emphasize that the issue

2   of credibility need not be decided in an all-or-nothing

3   fashion.  Even if you find that a witness testified falsely in

4   one part, you still may accept his testimony in other parts or

5   you may disregard all of it.  That is a determination entirely

6   for you.

7          You are instructed that you are to draw no conclusions

8   or inferences of any kind about the guilt of the defendant on

9   trial from the fact that one or more prosecution witnesses

10  pleaded guilty to similar charges.  The decision of those

11  witnesses to plead guilty was a personal decision those

12  witnesses made about their own guilt.  It may not be used by

13  you in any way as evidence against or unfavorable to the

14  defendant on trial here.

15         You've heard evidence that a witness made a statement

16  on an earlier occasion which counsel argued is inconsistent

17  with the witness' trial testimony.  Unless the prior statement

18  was sworn testimony or is the statement of a party, evidence of

19  a prior inconsistent statement is not to be considered by you

20  as affirmative evidence bearing on the guilt of the defendant.

21  Evidence of the prior inconsistent statement was placed before

22  you for the more limited purpose of helping you decide whether

23  to believe the trial testimony of the witness who contradicted

24  himself or herself.  If you find that the witness made an

25  earlier statement that conflicts with his or her

170918gayle1                    Trial

1    trial testimony, you may consider that fact in deciding how

2    much of his or her trial testimony, if any, to believe.

3              In making this determination, you may consider whether

4    the witness purposely made a false statement or whether it was

5    an innocent mistake; whether the inconsistency concerns an

6    important fact or whether it had to do with a small detail;

7    whether the witness had an explanation for the inconsistency;

8    and whether that explanation appealed to your common sense.

9              It is exclusively your duty, based upon all the

10   evidence and your own good judgment, to determine whether the

11   prior statement was inconsistent, and if so, how much, if any,

12   weight is to be given to the inconsistent statement -- sorry,

13   let me try that again.

14             It is exclusively your duty, based upon all the

15   evidence and your own good judgment, to determine whether the

16   prior statement was inconsistent, and if so, how much, if any,

17   weight to be given to the inconsistent statement in determining

18   the credibility of the witness.

19             The defendant in this case did not testify.  Under our

20   Constitution, a defendant in a criminal case has no obligation

21   to testify or to present any evidence, because it is the

22   government's burden to prove a defendant guilty beyond a

23   reasonable doubt.  A defendant is never required to prove that

24   he is innocent.

25             Therefore, you must not attach any significance to the

170918gayle1                     Trial

1    fact that the defendant did not testify.  No adverse inference

2    against the defendant may be drawn by you because he did not

3    take the witness stand, and you may not consider that fact in

4    any way in your deliberations in the jury room.

5            You have heard testimony of some witnesses who were

6    law enforcement officers during the events at issue in this

7    trial.  The law is that the testimony of a witness who is or

8    was employed by the government is not deserving of more or less

9    consideration or greater or lesser weight than that of any

10   other witness.

11           You have heard evidence during the trial that

12   witnesses have discussed the facts of the case and

13   their testimony with the lawyers before the witnesses appeared

14   in court.  You may consider that fact when you are evaluating a

15   witness' credibility, but there is nothing either unusual or

16   improper about a witness meeting with lawyers before

17   testifying.  Such consultation conserves your time and the

18   Court's time.  In fact, it would be unusual for a lawyer to

19   call a witness without such consultations.  The weight, if any,

20   you give to the fact or the nature of the witness' preparation

21   for his or her testimony, or the number of times the witness

22   met with the attorney, is a matter completely within your

23   discretion.

24           The indictment alleges that certain acts occurred on

25   or about various dates.  It is not necessary, however, for the

170918gayle1                    Trial

1    government to prove that the alleged crimes were committed on

2    exactly those dates.  It is sufficient if the crimes charged

3    are shown to have been committed on or within approximately the

4    dates charged in the indictment.

5         I gave you various limiting instructions from time to

6    time during the trial, and you must follow those instructions

7    during your deliberations.

8         There's been testimony before you about the use of

9    informants.  Use of informants is lawful, and evidence obtained

10   by the use of informants is properly considered by you.

11   Whether you approve or disapprove should not enter into your

12   deliberations.

13        You've heard testimony about evidence seized in

14   searches of various people and places.  Evidence obtained from

15   these searches was lawful, properly admitted in this case, and

16   may properly be considered by you.  Whether you approve or

17   disapprove of how it was obtained should not enter into your

18   deliberations.

19        Audio and video recordings of various conversations

20   and events have been admitted into evidence.  Whether you

21   approve or disapprove of the recording of those conversations

22   may not enter your deliberations.  I instruct you that these

23   recordings were made in a lawful manner, that no one's rights

24   were violated, that the government's use of this evidence is

25   lawful, and that it was properly admitted into evidence at this

170918gayle1                    Trial

1    trial.  You must, therefore, regardless of any personal

2    opinions, give this evidence full consideration along with all

3    the other evidence in the case in determining whether the

4    government has proved beyond a reasonable doubt the guilt of

5    the defendant.

6          You have heard what is called expert testimony from

7    various witnesses.  Actually, now that I think about it, just

8    one, the chemist.  An expert is allowed to express an opinion

9    on those matters about which he has special knowledge and

10   training.  Expert testimony is presented to you on the theory

11   that someone who is experienced in the field can assist you in

12   understanding the evidence or in reaching an independent

13   decision on the facts.

14         In weighing an expert's testimony, you may consider

15   the expert's qualifications, opinions, and reasons for

16   testifying, as well as all of the other considerations that

17   ordinarily apply when you are deciding whether or not to

18   believe a witness' testimony.

19         You may give the expert testimony whatever weight, if

20   any, you find it deserves in light of all the evidence in this

21   case.  You should not, however, accept a witness' testimony

22   merely because he is an expert, nor should you substitute it

23   for your own reason, judgment, and common sense.  The

24   determination of the facts in this case rests solely with you.

25         It is the duty of the attorney for each side of the

170918gayle1                    Trial

1    case to object when the other side offers testimony or other

2    evidence which the attorney believes is not admissible.

3    Counsel also have the right and duty to ask the Court to make

4    rulings of law.  All those questions of law must be decided by

5    me.  You should not show any prejudice against an attorney, or

6    his or her client, because the attorney objected to the

7    admissibility of evidence, or asked for a conference out of the

8    hearing of the jury, or asked the Court for a ruling on the

9    law.

10         As I already indicated, my rulings on the

11   admissibility of evidence do not indicate any opinion about the

12   weight or effect of such evidence.  You are the sole judges of

13   the credibility of all witnesses and the weight and effect of

14   all evidence.  If, however, I sustained an objection to any

15   evidence or if I offered evidence stricken, that evidence must

16   be entirely ignored.

17         You may not draw any inference, favorable or

18   unfavorable, toward the government or the defendant from the

19   fact that any person was not named as a defendant in this case,

20   and you may not speculate as to the reasons why other people

21   are not on trial before you now.

22         There are people whose names you heard during the

23   course of the trial, but who did not appear to testify.  I

24   instruct you that each party had an equal opportunity or lack

25   of opportunity to call any of these witnesses.  Therefore, you

170918gayle1                    Trial

1  should not draw any inferences or reach any conclusions about

2  what they would have testified to had they been called.  Their

3  absence should not affect your judgment in any way.  You should

4  remember my instruction, however, that the law does not impose

5  on a defendant in a criminal case the burden or duty of calling

6  any witnesses or producing any evidence.

7          You heard reference, in the arguments and

8  cross-examination of defense counsel in this case, to the fact

9  that certain investigative techniques were or were not used by

10  the government or particular investigative steps were or were

11  not taken by the government.  There is no legal requirement

12  that the government prove its case through any particular

13  means.  While you are to carefully consider the evidence

14  adduced by the government and whether it is sufficient, you are

15  not to speculate as to why they used the techniques they did or

16  why they did not use other techniques.  The government is not

17  on trial.  Your concern is to determine whether, on the

18  evidence or lack of evidence, the government has proven its

19  case beyond a reasonable doubt.

20          Some of the exhibits were charts, tables, and maps.

21  They are not direct evidence.  They are summaries of the

22  evidence.  They are a visual representation of information or

23  data as set forth either in the testimony of a witness or in a

24  stipulation or in documents.  They're admitted as aids to you

25  in your deliberations.

170918gayle1                    Trial

1          It is up to you whether those charts fairly and

2     correctly present the information in the testimony and the

3     documents.  To the extent the charts conform to what you

4     determine the underlying evidence to be, you may accept them.

5          The question of possible punishment of the defendant

6     may not enter into or influence your deliberations.  The duty

7     of imposing a sentence rests exclusively upon the Court.  That

8     means me.  Your function is to weigh the evidence in the case

9     and to determine whether the defendant is guilty as to each

10    charged count beyond a reasonable doubt, solely on the basis of

11    such evidence.  Under your oath as jurors, you cannot allow a

12    consideration of the punishment which may be imposed upon the

13    defendant, if he is convicted, to influence your verdict in any

14    way or in any sense enter into your deliberations.

15         Let us now turn to the charges in the indictment

16    against the defendant Tyrin Gayle, also known as "Spazzo."

17         I remind you that the indictment merely describes the

18    charges made against the defendant.  It is an accusation.  It

19    is not evidence.  I will first summarize the offenses charged

20    in the indictment and then explain in detail the elements of

21    each of the offenses.  There are seven counts in the

22    indictment.

23         Count One is a charge of conspiracy to violate the

24    Racketeer Influenced and Corrupt Organizations, or RICO, Act.

25    It alleges that from at least in or about 2015, up to and

170918gayle1                    Trial

1    including about May 2016, the defendant and others conspired,

2    or agreed, to conduct and participate in the conduct of the

3    affairs of a racketeering enterprise – named in the indictment

4    as the Yellow Tape Money Gang, or "YTMG" – through a series of

5    specific criminal acts alleged to constitute a pattern of

6    racketeering activity, consisting of multiple acts involving

7    murder, including conspiracy to murder and attempted murder, in

8    violation of New York Penal Law Sections 20.00, 105.15, 110.00,

9    and 125.25, and the distribution of controlled substances

10   including, crack cocaine and heroin, in violation of Sections

11   812, 841(a)(1), 841(b)(1)(A), and 846 of Title 18 of the United

12   States Code.

13            Don't panic, I'm going to explain all of that.

14            Count Two charges that on December 11, 2015, the

15   defendant attempted to murder, and aided and abetted the

16   attempted murder of, members of a rival gang in the vicinity of

17   South Street and Liberty Street in Newburgh, New York, in aid

18   of the activity of YTMG.

19            Count Three alleges that on February 21, 2016, the

20   defendant assaulted and attempted to murder, and aided and

21   abetted the assault and the attempted murder of, an individual

22   in the vicinity of South Street and Chambers Street in

23   Newburgh, New York, in aid of the activity of YTMG.

24            Count Four charges that from in or about 2015, through

25   May 2016, the defendant conspired (that is, agreed) to

170918gayle1                    Trial

1    distribute and possess with intent to distribute at least 280

2    grams of crack cocaine.

3           Count Five charges that from in or about 2015 through

4    May 2016, the defendant employed a minor in the commission of a

5    drug offense.

6           Count Six charges that from in or about 2015 through

7    May 2016, the defendant used, carried, possessed, brandished,

8    and discharged firearms, and aided and abetted the use,

9    carrying, possession, brandishing, and discharge of firearms

10   during, and in relation to, the racketeering conspiracy charged

11   in Count One and the narcotics conspiracy charged in Count

12   Four.

13          Count Seven charges that in or about 2017, the

14   defendant attempted to obstruct justice by tampering with a

15   witness.

16          I will go over each of these counts, and the elements

17   of each, in more detail in a few minutes, but first I will

18   explain the structure of the charges and theories of criminal

19   liability.

20          As you can tell, the indictment contains several

21   charges – charges, for example, involving narcotics

22   distribution, attempted murder, and firearms use.  The

23   government, as it is entitled to do, has brought charges

24   relating to the same underlying conduct under more than one

25   criminal statute, and therefore, you might say under more than

170918gayle1                    Trial

1    one theory of criminal liability.  For example, the alleged

2    distribution of drugs, that is the basis of the conspiracy

3    charged in Count Four, can also be considered as part of the

4    alleged pattern of racketeering in Count One.

5          A consequence of the indictment containing charges

6    brought under multiple statutes is that you will need to be

7    instructed on the legal elements and principals applicable to

8    each statute and theory of liability.  I will be instructing

9    you on the legal elements, definitions, and principals

10   applicable to each type of charge.  In other words, I will

11   provide you with all the instructions you need to decide

12   whether the government has proven beyond a reasonable doubt

13   each of the necessary elements on each of the charges in the

14   indictment.

15         You will need to consider each charge against the

16   defendant separately and determine whether the government has

17   carried its burden of proof with respect to that charge.

18         I will provide you with a verdict form, and you will

19   need to report on the verdict form the results of your

20   deliberations on each count.  To do so, you will need to keep

21   track during your deliberations of which charge you are

22   considering, and, even more specifically, the legal elements

23   applicable to the charge.  You should be able to do that using

24   the copies of my instructions and of the verdict form that you

25   will have with you in the jury room.  You may also have seen

170918gayle1                    Trial

1    that these instructions contain a detailed table of contents,

2    so as you consider each count, you will easily be able to find

3    the discussion of that count, including the elements the

4    government must prove beyond a reasonable doubt and an

5    explanation of these elements.  The verdict form will be

6    helpful in organizing your discussion and keeping track of your

7    decisions.

8         There are generally three theories under which a

9    defendant can be found guilty of -- we left that word out --

10   can be found guilty of criminal conduct: personal liability,

11   aiding and abetting liability, or *Pinkerton* or co-conspirator

12   liability.

13        Personal liability is just like it sounds.  A

14   defendant can be found guilty of criminal conduct if the

15   government proves that he himself personally committed the

16   charged offense.

17        Aiding and abetting liability means that a defendant

18   can be found guilty if the government proves that the defendant

19   aided and abetted another person who committed the charged

20   offense.  I will instruct you on the elements of aiding and

21   abetting liability in a moment.

22        Finally, *Pinkerton* liability – so called because it

23   was discussed in a case called *Pinkerton v. United States* –

24   refers to the law that under certain circumstances, a jury may,

25   but is not required to, hold a member of a conspiracy liable

170918gayle1                    Trial

for a crime committed by a co-conspirator.  Before you consider
*Pinkerton* liability as to a particular count, you must first
consider whether the defendant was actually part of a
conspiracy with the person who personally committed the crime.
To this end, and before I instruct you on each count, I will
now instruct you on the law of conspiracy.

The law of conspiracy applies to Count One, the charge
of conspiracy to violate the RICO statute, and Count Four, the
charge of conspiracy to distribute and possess with intent to
distribute at least 280 grams of crack cocaine.

A conspiracy is a kind of criminal part partnership –
an agreement of two or more persons to join together to
accomplish some unlawful purpose.

Conspiracy simply means agreement.  And the crime of
conspiracy to violate a federal law is an independent offense,
separate and distinct from the actual violation of any specific
federal laws.  Such actual violations are called "substantive
crimes."  You may find the defendant guilty of the crime of
conspiracy even if you find that the substantive crimes which
were the objects of the conspiracy were never actually
committed.  Congress has deemed conspiracy, standing alone, a
separate crime, even if the conspiracy is not successful.

To sustain its burden of proof with respect to the
RICO Conspiracy and Narcotics Distribution Conspiracy
allegations, that is Counts One and Four, the government must

170918gayle1                    Trial

1    prove beyond a reasonable doubt the following two elements:

2            First, the existence of the charged conspiracy — that

3    is, the existence of an agreement or understanding to commit

4    the unlawful objects of such conspiracy; and

5            Second, that the defendant knowingly became a member

6    of the conspiracy, with intent to further its illegal — that

7    is, with the intent to achieve the illegal object of the

8    charged conspiracy.

9            Now I will separately discuss each of these elements.

10           To prove the existence of a conspiracy, the government

11   is not required to show that two or more people sat around a

12   table and entered into a solemn pact, orally or in writing,

13   stating that they had formed a conspiracy to violate the law

14   and spelling out all the details.  Common sense tells you that

15   when people agree to enter into a criminal conspiracy, much is

16   left to unexpressed understanding.  It is rare that a

17   conspiracy can be proven by direct evidence of an explicit

18   agreement.

19           To show that a conspiracy existed, the evidence must

20   show beyond a reasonable doubt that two or more persons in some

21   way or manner, either explicitly or implicitly, came to an

22   understanding to violate the law and to accomplish an unlawful

23   plan.

24           In determining whether there has been an unlawful

25   agreement as alleged in the indictment, you may consider the

170918gayle1                    Trial

1    actions of all the alleged co-conspirators that were taken to

2    carry out the apparent criminal purpose.  The only evidence

3    that may be available with respect to the existence of a

4    conspiracy is that of disconnected acts on the part of the

5    alleged individual co-conspirators.  When taken all together

6    and considered as a whole, however, you may conclude – or may

7    not, as your good judgment dictates – that that warrants the

8    inference that a conspiracy existed just as conclusively as

9    more direct proof, such as evidence of an express agreement.

10        The object of a conspiracy is the illegal goal that

11   the conspirators agree or hope to achieve.  I will describe the

12   object of a particular conspiracy when instructing you on that

13   conspiracy.

14        If you conclude that the government has proven beyond

15   a reasonable doubt that the conspiracy you are considering

16   existed, and that the conspiracy had as its object one of the

17   illegal purposes charged in the indictment, then you must next

18   determine whether the defendant intentionally participated in

19   that conspiracy with knowledge of its unlawful purposes, and

20   with the intent to further its unlawful objectives.

21        The government must prove beyond a reasonable doubt

22   that the defendant knowingly and intentionally entered into the

23   conspiracy with criminal intent – that is, with a purpose to

24   violate the law – and that he agreed to take part in the

25   conspiracy to promote and cooperate in its unlawful objectives.

170918gayle1                    Trial

1              "Unlawfully" simply means contrary to law.  A

2    defendant does not need to have known that he was breaking any

3    particular law, but he must have been aware of the generally

4    unlawful nature of his acts.

5              The terms "knowingly" and "intentionally" mean that to

6    find that a defendant joined the conspiracy, you must conclude

7    beyond a reasonable doubt that in doing so, he knew what he was

8    doing; in other words, that the defendant took the actions in

9    question deliberately and voluntarily.  An act is done

10   "knowingly" and "intentionally" if it is done deliberately and

11   purposely; that is, the defendant's acts must have been the

12   product of the defendant's conscious objective, rather than the

13   product of a mistake or accident, or mere negligence, or some

14   other innocent reason.

15             Science has not yet devised a manner of looking into a

16   person's mind and knowing what that person is thinking.  The

17   government has introduced into evidence certain acts and

18   conversations alleged to have taken place with the defendant or

19   in his presence.  The government contends that these acts and

20   conversations show beyond a reasonable doubt the defendant's

21   knowledge of the unlawful purpose -- I'm sorry -- the

22   defendant's knowledge of the unlawful purposes of the

23   conspiracy.  The defendant denies that he was a member of the

24   conspiracy.

25             It is not necessary for the government to show that

170918gayle1                    Trial

 1  the defendant was fully informed as to all the details of the

 2  conspiracy for you to infer knowledge on his part.  To have

 3  guilty knowledge, the defendant need not know the full extent

 4  of the conspiracy or all of the activities of all of its

 5  participants.  It is not necessary for the defendant to know

 6  every other member of the conspiracy.  In fact, the defendant

 7  may know only one other member of the conspiracy and still be a

 8  co-conspirator.  Nor is it necessary for a defendant to receive

 9  any monetary benefit from his participation in the conspiracy,

10  or have a financial stake in the outcome.  It is enough if he

11  participated as a conspirator unlawfully, intentionally, and

12  knowingly as I have defined those terms.

13        The duration and extent of the defendant's

14  participation has no bearing on the issue of the defendant's

15  guilt.  He need not have joined the conspiracy at the outset.

16  With regard to liability for conspiracy (although not

17  substantive offenses), the defendant may have joined the

18  conspiracy at any time in its progress, and will still be held

19  responsible for all that was done before he joined if those

20  acts were reasonably foreseeable and within the scope of the

21  defendant's agreement, and for all that was done during the

22  conspiracy's existence while he was a member.  Each member of a

23  conspiracy may perform separate and distinct acts.  Some

24  conspirators play major roles, while others play minor roles in

25  the scheme.  An equal role is not what the law requires.  In

170918gayle1                    Trial

1   fact, even a single act may be sufficient to draw the defendant

2   within the scope of the conspiracy.

3           I want to caution you, however, that a person's mere

4   association with a member of a conspiracy does not make that

5   person a member of the conspiracy, even when that association

6   is coupled with knowledge that a conspiracy is taking place.

7   For example, mere presence at the scene of a crime, even

8   coupled with knowledge that a crime is taking place, is not

9   sufficient to support a conviction for conspiracy.  In other

10  words, knowledge without agreement and participation is not

11  sufficient.  What is necessary is that the defendant has

12  participated in the conspiracy with knowledge of its unlawful

13  purposes and with an intent to aid in the accomplishment of its

14  unlawful objectives.  A person may know, or be friendly with, a

15  conspirator without being a conspirator himself.  Mere

16  similarity of conduct or the fact that persons may have

17  assembled together and discussed common aims and interests does

18  not necessarily establish membership in a conspiracy.

19          I also want to caution you that mere knowledge of or

20  acquiescence to the unlawful plan - without participation in it

21  - is not sufficient.  Moreover, the fact that the acts of the

22  defendant without knowledge merely happened to further the

23  purposes or objectives of the conspiracy, does not make the

24  defendant a member.  More is required under the law.  The

25  defendant must have participated with knowledge of at least

170918gayle1                    Trial

1    some of the purposes or objectives of the conspiracy and with

2    the intention of aiding in the accomplishment of those unlawful

3    ends.

4           In sum, you must find beyond a reasonable doubt that

5    the defendant, with an understanding of the unlawful nature of

6    the conspiracy, intentionally engaged, advised or assisted in

7    the conspiracy for the purpose of furthering an illegal

8    undertaking.  The defendant thereby becomes a knowing and

9    willing participant in the unlawful agreement – that is to say,

10   a conspirator.

11          A conspiracy, once formed, is presumed to continue

12   until either its objective is accomplished or there is some

13   affirmative act of termination by its members.  Similarly, once

14   a person is found to be a member of a conspiracy, he is

15   presumed to continue his membership in the venture until its

16   termination.

17          It is not essential that the government prove that a

18   particular conspiracy alleged in the indictment started or

19   ended on any of the specific dates described for that

20   conspiracy.  It is sufficient if you find that the conspiracy

21   was formed and that it existed for some time around or within

22   the dates set forth in the indictment.

23          You will see that the pattern of racketeering activity

24   charged in Count One – which is the conspiracy to violate the

25   RICO Act, which I will explain in more detail shortly – is

170918gayle1                    Trial

1    alleged to have included conspiracy to murder under New York

2    Penal Law.  Under New York Penal Law Section 105.15, a person

3    is guilty of conspiracy to commit a crime when, quote, "with

4    the intent that [such crime be committed], he agrees with one

5    or more persons to engage in, or cause the performance of such

6    conduct."

7           To find that a defendant participated in a conspiracy

8    under New York law, the two elements of federal conspiracy I've

9    just described must be met, and one additional element must be

10   met, the so-called "overt act" requirement.  New York Penal Law

11   Section 105.20 provides, quote, "[a] person shall not be

12   convicted of conspiracy unless an overt act is alleged and

13   proved to have been committed by one of the conspirators in

14   furtherance of the conspiracy."  An overt act is an independent

15   act that tends to carry out the conspiracy, but need not

16   necessarily be the object of the crime.  There's no requirement

17   under the RICO conspiracy or narcotics conspiracy laws that an

18   overt act be committed, but New York's conspiracy law does not

19   punish agreement alone without some proof that the

20   co-conspirators intended to convert planning into action.  The

21   function of the overt act requirement is simply to manifest

22   that the conspiracy is at work.

23          You may consider as evidence against the defendant the

24   acts and statements of those who were co-conspirators of the

25   defendant.  The reason for this rule has to do with the nature

170918gayle1                    Trial

1    of the crime of conspiracy.  A conspiracy is often referred to

2    as a partnership in crime.  Thus, as in other types of

3    partnerships, when people enter into a conspiracy to accomplish

4    an unlawful end, each member becomes an agent for the other

5    conspirators in carrying out the conspiracy.  Accordingly, the

6    reasonably foreseeable acts, declarations, statements and

7    omissions of any member of the conspiracy in furtherance of the

8    common purpose of the conspiracy are deemed, under the law, to

9    be the acts of all the members, and all the members are

10   responsible for such acts, declarations, statements and

11   omissions.

12          If you find, beyond a reasonable doubt, that the

13   defendant was a member of a charged conspiracy, then any acts

14   done or statements made in furtherance of that conspiracy by

15   persons also found by you to have been members of that

16   conspiracy may be considered.  This is so, even if the acts

17   were done or statements made in the defendant's absence and

18   without his knowledge.  But before you may consider the

19   statements or acts of a co-conspirator in deciding the issue of

20   the defendant's guilt, you must first determine that the acts

21   and statements were made during the existence and in

22   furtherance of the unlawful scheme.  If the acts were done or

23   the statements were made by someone whom you do not find to

24   have been a member of the conspiracy, or if they were not said

25   or done in furtherance of the conspiracy, they may not be

170918gayle1                          Trial

1    considered by you as evidence against the defendant.

2           We now turn to *Pinkerton* liability – that is, the

3    theory under which a defendant who is a member of a conspiracy

4    may be held liable for a crime committed by a co-conspirator.

5    *Pinkerton* liability should be considered by you only in

6    connection with Counts Two, Three and Six, and only if you do

7    not find that the defendant personally committed or aided and

8    abetted in the commission of those offenses.

9           If you find that the defendant was part of one of the

10   conspiracies alleged in the indictment – that is, if you find

11   that the government has proven beyond a reasonable doubt the

12   elements I just described as to a particular conspiracy – then

13   you may, but are not required to, find the defendant liable for

14   a substantive offense committed by a co-conspirator, provided

15   that the government has proven the following elements beyond a

16   reasonable doubt:

17          First, that a crime charged in the substantive count

18   you are considering was committed;

19          Second, that the person or persons you find actually

20   committed the crime were members of the corresponding

21   conspiracy you found existed;

22          Third, that the substantive crime was committed

23   pursuant to the common plan and understanding you found to

24   exist among the conspirators;

25          Fourth, that the defendant was a member of the

170918gayle1                    Trial

1    conspiracy at the time the substantive crime you are

2    considering was committed (that is, the defendant had entered

3    into the conspiracy); and

4          Fifth, that the defendant could reasonably have

5    foreseen that the substantive crime you are considering might

6    be committed by his co-conspirators.

7          If you find the government has proven all five of

8    these elements beyond a reasonable doubt, then you may find the

9    defendant guilty of a substantive offense charged against him,

10   even if he did not personally participate in the acts

11   constituting the crime, and even if he did not have actual

12   knowledge of it.

13         Aiding and abetting liability is its own theory of

14   criminal liability.  In effect, it is a theory of liability

15   that permits a defendant to be convicted of a specified crime

16   if the defendant, while not himself committing the crime,

17   assisted another person or persons in committing the crime.  I

18   will instruct you on both federal and New York aiding and

19   abetting law because the indictment alleges aiding and abetting

20   violations of both federal and New York statutes.

21         Under the federal aiding and abetting statute, quote,

22   "[w]hoever commits an offense against the United States or

23   aids, abets, counsels, commands, induces or procures its

24   commission, is punishable as a principal."  In other words, a

25   person who aids or abets another to commit an offense is just

170918gayle1                    Trial

1   as guilty of that offense as if he committed it himself.

2   Accordingly, you may find the defendant guilty of a crime if

3   you find that the government has proven beyond a reasonable

4   doubt that another person actually committed the crime and that

5   the defendant aided and abetted that person in committing the

6   crime.

7          As you can see, the first requirement is that another

8   person has committed the crime charged.  Obviously, no one can

9   be convicted of aiding and abetting the criminal acts of

10  another if no crime was committed by the other person.  But if

11  you do find that a crime was committed, then you must consider

12  whether the defendant aided or abetted the commission of the

13  crime.

14         To aid or abet another to commit a crime, it is

15  necessary that the defendant knowingly associated himself in

16  some way with the crime charged, and that he knowingly

17  committed some act to contribute to the success of the crime.

18  A person acts knowingly if he acts voluntarily and

19  deliberately, and not because of mistake or accident, mere

20  negligence or other innocent reason.  The government must prove

21  that the defendant engaged in some affirmative conduct for the

22  specific purpose of bringing about the crime.

23         The mere presence of a defendant where a crime is

24  being committed, even coupled with knowledge by the defendant

25  that a crime is being committed, or the mere acquiescence by a

170918gayle1                    Trial

1  defendant in the criminal conduct of others, even with guilty

2  knowledge, is not sufficient to establish aiding and abetting.

3  To be found guilty, the government must prove that an aider and

4  abettor took some conscious action that furthered the

5  commission of the crime and that he did so with the intent to

6  bring about the crime.  To determine whether the defendant

7  aided and abetting a crime, ask yourself:  Did he participate

8  in the crime charged as something he wished to bring about?

9  Did he associate himself with the criminal venture knowingly?

10  Did he seek by his actions to make the criminal venture

11  succeed?  If so, then the defendant is an aider and abettor,

12  and therefore guilty of the offense.  If not, then the

13  defendant is not an aider and abettor, and therefore not guilty

14  under an aiding and abetting theory.

15          You will see that the pattern of racketeering activity

16  charged in Count One, which I'll explain in a few moments, is

17  alleged to have included the aiding and abetting of crimes

18  under the New York Penal Law.  New York Penal Law Section 20.0

19  applies to aiding and abetting and provides as follows:  Quote,

20  "When one person engages in conduct which constitutes an

21  offense, another person is criminally liable for such conduct

22  when, acting with the mental culpability required for the

23  commission thereof, he solicits, requests, commands, importunes

24  or intentionally aids such person to engage in such conduct."

25          Under that definition, mere presence at the scene of a

170918gayle1                    Trial

1   crime, even with knowledge that the crime is taking place, (or

2   mere association with a perpetrator of a crime), does not by

3   itself make a defendant criminally liable for that crime.

4         For the defendant to be held criminally liable for the

5   conduct of another that constitutes an offense, you must find

6   beyond a reasonable doubt:

7         First, that the defendant solicited, requested,

8   commanded, importuned, or intentionally aided that person to

9   engage in the conduct; and

10        Second, that the defendant did so with the state of

11  mind required for the commission of the offense.

12        Count One, the RICO conspiracy statute -- excuse me --

13  the RICO conspiracy count, charges the defendant with

14  conspiring, that is, agreeing, to conduct or participate in the

15  conduct of the affairs of the enterprise known as the Yellow

16  Tape Money Gang -- sorry, I messed that up.

17        Count One, the RICO conspiracy count, charges the

18  defendant with conspiring, that is, agreeing, to conduct or

19  participate in the conduct of the affairs of an enterprise

20  known as the Yellow Tape Money Gang enterprise through an

21  alleged pattern of racketeering activity consisting of acts

22  involving murder (including conspiracy to murder, attempted

23  murder, and aiding and abetting attempted murder), and acts

24  involving distribution of controlled substances (including

25  distribution of crack cocaine and heroin, possession of crack

170918gayle1                    Trial

1   cocaine and heroin with intent to distribute, aiding and

2   abetting the same and conspiracy to do the same).

3          Count One alleges that the defendant conspired to

4   violate the RICO statute, Section 1962(c) of Title 18 of the

5   United States Code, which makes it a crime for, quote:

6          "Any person employed by or associated with any

7   enterprise engaged in, or the activities of which affect,

8   interstate or foreign commerce, to conduct or participate,

9   directly or indirectly, in the conduct of such enterprise's

10  affairs through a pattern of racketeering activity..."

11         The RICO statute, in essence, makes it a crime for a

12  person to participate in the conduct of an enterprise's affairs

13  through a pattern of certain violation of laws known as

14  "racketeering acts."  These alleged violations, or racketeering

15  acts, may be violations of federal or state law, and I will

16  discuss them shortly.

17         The word "racketeering" may have certain implications

18  in our society.  Do not infer anything from it.  The use of the

19  term in the applicable statute and here in this courtroom

20  should not be regarded as having anything to do with your

21  determination of whether the guilt of the defendant has been

22  proven beyond a reasonable doubt.  The term is merely a term

23  used by Congress to describe the statute.

24         For Count One, the government must prove beyond a

25  reasonable doubt each of the following elements:

170918gayle1                    Trial

1          First, that the enterprise alleged in the indictment

2    existed;

3          Second, that the enterprise affected interstate or

4    foreign commerce;

5          Third, that the defendant was employed by or

6    associated with the enterprise; and

7          Fourth, that the defendant willfully and knowingly

8    agreed with at least one other person to participate directly

9    or indirectly in the conduct of the affairs of that enterprise

10   through a pattern of racketeering activity – that is, that

11   either the defendant or a co-conspirator would commit at least

12   two acts of racketeering.

13         The first element that the government must prove

14   beyond a reasonable doubt is that the alleged enterprise, the

15   Yellow Tape Money Gang – in fact existed.

16         Under the RICO statute, an enterprise may be a group

17   of people informally associated together for a common purpose

18   of engaging in a course of conduct.  This group may be

19   organized for a legitimate and lawful purpose, or it may be

20   organized for an unlawful purpose.  In addition to having a

21   common purpose, this group of people must have a core of

22   personnel who function as a continuing unit.  It does not have

23   to be a commonly recognized legal entity, such as a

24   corporation, a trade union, a partnership, or the like.  The

25   statute makes clear that an enterprise may be "a group of

170918gayle1                    Trial

1    individuals [who are] associated in fact although not a legal

2    entity."  Furthermore, the enterprise must continue to exist in

3    substantially similar form through the period charged.  This

4    does not mean that the membership must remain exactly

5    identical, but the enterprise must have a recognizable core

6    that continues during a substantial period within the time

7    frame charged in the indictment.

8           Here, the enterprise alleged in the indictment to have

9    existed is compromised of members and associates of the Yellow

10   Tape Money Gang, and it is alleged to have existed from at

11   least in or about 2015, up to and including in or about

12   May 2016.

13          If you find that this was a group of people

14   characterized by (1) a common purpose or purposes, (2) an

15   ongoing formal or informal organization or structure, and (3)

16   core personnel who functioned as a continuing unit during a

17   substantial period within the time frame charged in the

18   indictment, then you may find that an enterprise existed.

19          The second element that the government must prove

20   beyond a reasonable doubt is that the enterprise was engaged in

21   or it had an effect upon interstate or foreign commerce.

22   Interstate commerce includes the movement of goods, services,

23   and individuals between states.

24          The government must prove that the enterprise engaged

25   in interstate commerce or that its activities affected

170918gayle1                    Trial

1    interstate commerce.  The enterprise or the racketeering

2    activities of its members must have affected interstate or

3    foreign commerce in some minimal way.  The effect need not be

4    substantial; even a minimal effect is enough.  Nor is it

5    necessary that the effect on interstate commerce have been

6    adverse.  It is not necessary to prove that the acts of the

7    defendant affected interstate commerce, as long as the acts of

8    the enterprise itself had such an effect.  It is sufficient,

9    for example, if, in the course of the racketeering activities,

10   members of the enterprise used weapons that had traveled in

11   interstate commerce, trafficked in narcotics, traveled

12   interstate themselves, or used telephone facilities interstate.

13   All narcotics activity, even purely local activity, has an

14   effect on interstate commerce.  So if you find that members of

15   the enterprise trafficked in narcotics as part of their

16   membership in the enterprise, you may find this element

17   satisfied.

18          Finally, the government is not required to prove that

19   the defendant knew he was affecting interstate commerce.  All

20   that is necessary is that you find beyond a reasonable doubt

21   that the activities of the enterprise affected interstate or

22   foreign commerce in some minimal way.

23          The third element the government must prove beyond a

24   reasonable doubt is that the defendant was associated with or

25   employed by the enterprise.  It is not required that the

170918gayle1                    Trial

1    defendant have been associated with or employed by the

2    enterprise for the entire time that the enterprise existed.  It

3    is required, however, that the government prove beyond a

4    reasonable doubt that at some time during the period indicated

5    in the indictment, the defendant was associated with or was

6    employed by the enterprise.

7         A defendant cannot be associated with or employed by

8    an enterprise if he does not know of the enterprise's existence

9    or the nature of its activities.  Thus, to prove this element,

10   the government must prove beyond a reasonable doubt that the

11   defendant knew of the existence of the enterprise and of the

12   general nature of its activities, and was connected to the

13   enterprise in some meaningful way.

14        To satisfy its burden of proof for the fourth

15   element, the government must prove beyond a reasonable doubt

16   that the defendant knowingly and willfully agreed to

17   participate, directly or indirectly, in the affairs of the

18   enterprise through a pattern of racketeering activity.

19        The government must prove that the defendant

20   participated in some manner in the overall affairs of the

21   enterprise and the objectives of the conspiracy, and that he

22   did so with the intent that he or another member or members of

23   the enterprise would commit at least two acts of racketeering,

24   of the types specified in the indictment as part of a pattern

25   of racketeering activity.  I have previously defined

170918gayle1                    Trial

1    "knowingly" and "intentionally" at pages 22-23, and you should

2    apply those definitions here.  You should also apply by earlier

3    instructions on conspiracy on pages 20-28.

4          A pattern of racketeering activity requires at least

5    two acts of racketeering committed within ten years of one

6    another, excluding any period of imprisonment after the

7    commission of a prior act of racketeering.

8          That is a really complicated way of saying they must

9    be committed within ten years -- there must be at least two

10   acts of racketeering committed within ten years of each other,

11   and excluding any period of imprisonment.

12         To establish an agreement to commit a "pattern of

13   racketeering activity," as alleged in Count One of the

14   indictment, the government must prove three elements beyond a

15   reasonable doubt:

16         First, that the defendant agreed that a conspirator,

17   which could include the defendant or any other member of the

18   conspiracy, would intentionally commit, or cause, or aid and

19   abet the commission of, two or more racketeering acts of the

20   types alleged in the indictment.  At the end of this

21   instruction, I will instruct you on the elements regarding each

22   of the charged categories of racketeering activity.

23         Second, that the racketeering acts had a "nexus" to

24   the enterprise and the racketeering acts are "related" to one

25   another.  A racketeering act has a "nexus" to the enterprise if

170918gayle1                    Trial

1   it has a meaningful connection to the enterprise.  To be

2   "related," the racketeering acts must have the same or similar

3   purposes, results, participants, victims, or methods of

4   commission, or be otherwise interrelated by distinguishing

5   characteristics and not be merely isolated events.  Two

6   racketeering acts may be "related" even though they are

7   dissimilar or not directly related to each other, provided that

8   the racketeering acts are related to the same enterprise.  For

9   example, for both "nexus" and "relatedness" purposes, the

10  requisite relationship between the RICO enterprise and a

11  predicate racketeering act may be established by evidence that

12  the defendant was enabled to commit the racketeering act solely

13  by virtue of his position in the enterprise or involvement in

14  or control over its affairs, or by evidence that the

15  defendant's position in the enterprise facilitated his

16  commission of the racketeering act, or by evidence that the

17  racketeering act benefited the enterprise, or by evidence that

18  the racketeering act was authorized by the enterprise or by

19  evidence that the racketeering act promoted or furthered the

20  purpose of the enterprise.

21          Third, to establish a pattern of racketeering

22  activity, the government must prove that the racketeering acts

23  themselves either extended over a substantial period of time or

24  they posed or would pose a threat of continued criminal

25  activity.  The government need not prove such a threat of

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

170918gayle1                    Trial

1  continuity by any mathematical formula or by any particular

2  method of proof, but rather may prove it in a variety of ways.

3  For example, the threat of continued unlawful activity may be

4  established when the evidence shows that the racketeering acts

5  are part of a long-term association that exists for criminal

6  purposes, or when the racketeering acts are shown to be the

7  regular way of conducting the affairs of the enterprise.

8  Moreover, in determining whether the government has proven the

9  threat of continued unlawful activity, you are not limited to

10 consideration of the specific racketeering acts that the

11 defendant himself is alleged to have committed; rather, in

12 addition to considering such acts, you may also consider the

13 nature of the enterprise, and other unlawful activities of the

14 enterprise and its members viewed in their entirety, including

15 both charged and uncharged unlawful activities.

16        For the government to meet its burden of proof under

17 Count One, the government must prove beyond a reasonable doubt

18 that the defendant intended to further an endeavor which, if

19 completed, would have satisfied all the elements of a

20 substantive racketeering offense.  The government is not

21 required to prove that the defendant personally committed or

22 agreed to commit any act of racketeering, nor is it required to

23 prove that any acts of racketeering actually occurred.  Rather,

24 the government must prove that the defendant agreed to

25 participate in the enterprise with the knowledge and intent

170918gayle1                    Trial

1    that at least one member of the racketeering conspiracy, which

2    could be the defendant or a co-conspirator, would commit at

3    least two racketeering acts in the conduct of the affairs of

4    the enterprise and that those acts would constitute a pattern

5    of racketeering activity as defined above.

6           Let me make clear that an enterprise is not the same

7    thing as a pattern of racketeering activity.  To convict a

8    defendant under the RICO conspiracy statute, the government

9    must prove both that there was an enterprise and that the

10   enterprise's affairs were conducted through a person of

11   racketeering activity.  As I have mentioned, the enterprise in

12   this case is alleged to be a group of individuals who

13   associated together for a common purpose of engaging in a

14   course of conduct.  A pattern of racketeering activity, on the

15   other hand, is a series of criminal acts.

16          The existence of the enterprise is proved by evidence

17   of an ongoing organization, formal or informal, with a common

18   purpose and by evidence that various core personnel of the

19   group functioned as a continuing unit.

20          The pattern of racketeering activity, on the other

21   hand, is proven by evidence of a minimum of two acts of

22   racketeering that the participants in the enterprise committed

23   or aided and abetted.  The proof used to establish those

24   separate elements may be the same or overlapping.  For example,

25   if you find that an ongoing enterprise existed, the existence

170918gayle1                    Trial

1    of this enterprise may help to establish that the separate

2    racketeering acts were part of a "pattern" of continuing

3    criminal activity.  Nevertheless, you should bear in mind that

4    proof of an enterprise does not necessarily establish proof of

5    a pattern of racketeering activity, and vice versa.  The

6    enterprise and the pattern of racketeering activity are

7    separate elements that must be proven by the government.

8            Finally, although you need not decide whether the

9    government agreed to the commission of any particular

10   racketeering act to convict the defendant of the RICO

11   conspiracy offense, you must be unanimous as to which type or

12   types of predicate racketeering activity the defendant agreed

13   would be committed; for example, at least two acts of attempted

14   murder or conspiracy to murder or two acts of drug-trafficking

15   or any combination thereof.

16           The government is not required to prove either that

17   the defendant agreed to commit two racketeering acts himself or

18   that he actually committed two such acts, although you may

19   consider evidence that he agreed to commit or actually did

20   commit such acts in determining whether he agreed to

21   participate in the conduct of the enterprise.  Let me read this

22   sentence again.

23           Okay.  I think the words "from proof" don't belong in

24   there.  So, let me try the sentence again.

25           The government is not required to prove either that

170918gayle1                    Trial

1   the defendant agreed to commit two racketeering acts themselves

2   or that he actually committed two such acts, although you may

3   consider evidence that he agreed to commit or actually did

4   commit such acts in determining whether he agreed to

5   participate in the conduct of the enterprise through a pattern

6   of racketeering activity.

7           In other words, what you're being asked to decide in

8   Count One is this:  Did the defendant know about the activities

9   of the other members of the conspiracy, and unlawfully,

10  knowingly and willfully join in and participate and contribute

11  in some fashion to the goals of the conspiracy, knowing that he

12  or any of his co-conspirators would commit two or more charged

13  acts of racketeering as part of the conspiracy?

14          Now, let me turn to the specific racketeering acts

15  charged in Count One and the elements of those acts.

16          The indictment alleges that the following racketeering

17  acts were or were intended to be committed as part of a

18  conspiracy:

19          (a) multiple acts involving murder, including

20  conspiracy to murder, attempted murder, and aiding and abetting

21  attempted murder, in violation of New York Penal Law Sections

22  20.0, 105.15, 110.0, and 125.25; and

23          (b) multiple offenses involving the distribution of

24  controlled substances, including crack cocaine and heroin, in

25  violation of Sections 812, 841(a)(1), 841(b)(1)(A), and 846 of

                SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
                              (914)390-4053

170918gayle1                    Trial

1    Title 18 of the United States Code.

2            The government must prove that within a ten-year

3    period (excluding any period of incarceration), two acts in

4    violation of these statutes were committed, or intended to be

5    committed by the defendant or a co-conspirator, as part of the

6    charged RICO conspiracy.  You will note that each category of

7    predicate offenses includes a violation of more than one

8    specific law.  To find that a given predicate offense was an

9    object of the charged RICO conspiracy, you need only find that

10   the object of the conspiracy involved the violation of at least

11   one of the specified statutes, but you must be unanimous as to

12   which one(s).

13           The defendant is not charged with actual murder, but I

14   will explain the elements for murder under New York Penal Law

15   Section 125.25 so that you may understand conspiracy and

16   attempt to murder.

17           The elements of murder under New York state law are:

18           First, that the individual caused the death of the

19   victim or aided and abetted the same; and

20           Second, that the individual did so with intent to

21   cause the death of the victim or another person.

22           A person intends to cause the death of another person

23   when his conscious objective is to cause the death of that

24   person.  To prove that an individual caused the victim's death,

25   the government must prove that the individual's conduct was a

                SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
                            (914)390-4053

170918gayle1                     Trial

1    sufficiently direct cause of the death of the victim or a

2    reasonably foreseeable result of that conduct.  Intent does not

3    require premeditation or advance planning, but the intent to

4    cause death must exist at the time the individual engages in

5    the acts that caused death.  Furthermore, there's no

6    requirement under the murder statute that the person who is

7    murdered be the same person who was intended to be murdered.

8    Thus, the intent element is satisfied when the perpetrator

9    intends to kill one person but instead kills another person.

10          In determining whether the defendant agreed as part of

11   the RICO conspiracy that he or a co-conspirator would commit or

12   attempt to commit acts involving murder in violation of New

13   York state law, you may apply the instructions on aiding and

14   abetting I gave you earlier.  Thus, you may find that the RICO

15   conspiracy involved acts involving murder either because you

16   find that the defendant agreed that he or a co-conspirator

17   would commit or attempt to commit an act constituting murder

18   under New York law, or because you find that he agreed that he

19   or a co-conspirator would assist a third party in doing so.

20          New York Penal Law Section 110.00 provides that a

21   "person is guilty of an attempt to commit a crime" – here,

22   murder – "when, with intent to commit that crime, he engages in

23   conduct which tends to effect the commission of such crime."

24   The elements of attempted murder under New York state law are:

25          First, that the perpetrator intended to kill another

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

170918gayle1                    Trial

1    person; and

2           Second, that perpetrator attempted to cause the death

3    of that person, meaning that the perpetrator engaged in conduct

4    which tended to effect the death of another person.

5           One is not guilty of an attempt to commit murder under

6    New York state law until on the verge of committing it.  Mere

7    preparation is not sufficient.  The acts committed by the

8    defendant, or those he is aiding and abetting, are required to

9    carry the project forward within dangerous proximity of the

10   criminal end to be attained.

11          The defendant is also charged as a predicate

12   racketeering act with conspiracy to commit murder under New

13   York Penal Law Section 105.15.  For the government to prove

14   beyond a reasonable doubt that a person conspired to commit

15   murder under New York state law, the government must show:

16          First, that the individual agreed with one or more

17   other persons to engage in or cause the performance of a

18   murder;

19          Second, that the defendant did so with the intent that

20   such murder be performed;

21          Third, that the individual, or one of the people with

22   whom he agreed to engage in or cause the performance of the

23   conduct, committed an overt act in furtherance of the

24   conspiracy.

25          A person acts with intent that a murder be performed

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

170918gayle1                    Trial

1    when his conscious objective or purpose is that the murder

2    should occur.

3            The agreement to engage in or cause the performance of

4    a crime is not itself an overt act.  The overt act must be an

5    independent act that tends to carry out the conspiracy.  The

6    overt act can be, but need not be, the commission of the crime

7    that was the object of the conspiracy.

8            Under New York law, it is no defense to a charge of

9    conspiracy that one or more of the individual's co-conspirators

10   could not be guilty of conspiracy or the object crime, whether

11   because of criminal irresponsibility or other legal incapacity

12   or exemption; unawareness of the criminal nature of the

13   agreement or the object conduct or the defendant's criminal

14   purpose; or other factors precluding the mental state required

15   for the commission of conspiracy or the object crime.  In other

16   words, a person may be guilty of conspiracy even though one or

17   more or all of the other parties to the agreement are not

18   guilty of the conspiracy or the murder because of some legal

19   insufficiency or defense.

20           The indictment alleges a second category of offenses

21   that were committed or intended to be committed as part of the

22   RICO conspiracy: acts involving the distribution of narcotics,

23   possession with intent to distribute narcotics, and conspiracy

24   to distribute and possess with intent to distribute narcotics,

25   specifically crack cocaine and heroin, in violation of those

170918gayle1                    Trial

1    Sections of Title 21 that I previously read.

2            Section 846 of Title 21 of the U.S. Code makes it a

3    crime for an individual to conspire with others to violate the

4    narcotics laws of the United States.  To be guilty of narcotics

5    conspiracy, the government must prove:

6            First, that the narcotics conspiracy actually existed;

7    in other words, there was in fact an agreement or understanding

8    to violate those provisions of law that make it illegal to

9    distribute narcotics or to possess narcotics with the intent to

10   distribute them; and

11           Second, the defendant intentionally and knowingly

12   became a member of the narcotics conspiracy; that is, he

13   knowingly associated himself with the narcotics conspiracy and

14   participated in the conspiracy to distribute or possess with

15   the intent to distribute narcotics.

16           I have already explained the federal law of

17   conspiracy, and you should apply that law here.

18           Under Section 841 of Title 21, it is unlawful for any

19   person knowingly or intentionally "to manufacture, distribute

20   or dispense, or possess with intent to manufacture, distribute

21   or dispense, a controlled substance."  Crack cocaine and heroin

22   are "controlled substances" under the federal statute.  The

23   elements of distributing or possessing with the intent to

24   distribute narcotics are:

25           First, that the defendant or a co-conspirator

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

170918gayle1                    Trial

distributed a controlled substance or possessed a controlled

substance with the intent to distribute it;

        Second, that he did so intentionally and knowingly;

and

        Third, that the substance involved was in fact a

controlled substance.

        In determining whether the defendant agreed as part of

the RICO conspiracy that he or a co-conspirator would commit

acts involving the distribution of a controlled substance, you

may apply the aiding and abetting instruction I gave you

earlier.  Thus, you may find that the RICO conspiracy involved

the distribution of controlled substances because you find the

defendant agreed that either he or a co-conspirator would

personally distribute drugs or possess them with intent to

distribute, or because you find that he agreed that he or a

co-conspirator would assist a third party in doing so.

        The legal concept of "possession" may differ from the

everyday usage of the term, so let me explain it in some

detail.

        Actual possession is what most of us think as

possession, that is, having physical custody or control of an

object, like I possess this pen.  If you find that the

defendant or a co-conspirator had the controlled substance on

his person, then you may find that he had possession of it.  A

person, however, need not have actual physical possession, that

170918gayle1                    Trial

1    is, physical custody of an object – to be in legal possession

2    of it.  If a person has the ability to exercise substantial

3    control over an object, even if he does not have the object in

4    his physical custody, and that person has the intent to

5    exercise such control, then the person is in possession of that

6    object.  This is called "constructive possession."

7           More than one person can have control over the same

8    narcotics.  Moreover, possession and ownership are not the

9    same.  A person can possess an object and not be the owner of

10   it.

11          The word "distribution" means the actual,

12   constructive, or attempted transfer of a controlled substance.

13   To "distribute" means to deliver, pass, or hand over something

14   to another person, or cause something to be delivered, passed

15   on, or handed over to another person.  Distribution does not

16   require a sale.

17          Turning to the definition of "possession with intent

18   to distribute," I begin with the concept of "possession."

19   Possession is pretty much what it sounds like.  As I mentioned,

20   actual possession is having physical custody or control of an

21   object, and constructive possession is essentially having

22   control over it, even if not physically possessing it.  To

23   "possess with intent to distribute" simply means to have or

24   control a controlled substance with the intent or purpose to

25   "distribute" it to another person or persons.  As I said,

170918gayle1                    Trial

1    "distribute" means simply to transfer to another.

2            How can you tell whether a person intended to

3    distribute drugs?  Because you cannot read a person's mind,

4    usually you must make an inference from his behavior.  You

5    cannot find someone guilty, however, unless these inferences

6    convince you beyond a reasonable doubt that the person had the

7    intention to distribute the controlled substance.  If someone

8    conspired to obtain drugs for his personal use, rather than for

9    the purpose of distribution or delivery to another, that person

10   would not be guilty of this offense.

11           It may be possible to infer an intention to distribute

12   from the quantity of drugs that you find were involved,

13   although possession of a large quantity of narcotics does not

14   necessarily mean the possessor intended to distribute them.  On

15   the other hand, a person may have intended to distribute a

16   controlled substance even if he did not possess a large amount

17   of it.  You should make your decision whether the government

18   has proved beyond a reasonable doubt that the defendant

19   conspired to distribute controlled substances from all of the

20   evidence in the case.

21           I have previously defined "knowingly" and

22   "intentionally" on pages 22-23, and you should apply those

23   definitions here.

24           One further point -- one further point on Count One, I

25   guess I should say.  If, and only if, you find the defendant

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

170918gayle1                    Trial

1    guilty of Count One, and if, and only if, you find that the

2    government has proven beyond a reasonable doubt that the

3    pattern of racketeering activity the defendant agreed would be

4    committed involved acts involving the distribution of

5    controlled substances, you must then determine the type of

6    controlled substance or substances involved in the conspiracy.

7    The government has alleged that the controlled substances

8    involved in the conspiracy were crack cocaine and heroin.

9         If you conclude, unanimously, that the government has

10   proven beyond a reasonable doubt that the conspiracy alleged in

11   Count One – not as part of Count One – involves crack cocaine,

12   check "YES" in response to the interrogatory regarding that

13   particular controlled substance on the verdict form.  (An

14   interrogatory is simply a question.)  The government need not

15   prove the purity of the controlled substance; any mixture or

16   substance containing a detectable amount of a controlled

17   substance is sufficient.

18        There is also a special interrogatory regarding the

19   quantity of crack cocaine involved.  You should reach this

20   question only if you have checked "YES" for crack cocaine.  You

21   need not determine the precise quantity.  If you reach the

22   question of quantity as to crack cocaine, you need only

23   indicate on the verdict form, at least with respect to Count

24   One, I should say, whether the government has established

25   beyond a reasonable doubt that the conspiracy involved 280

170918gayle1                    Trial

1  grams or more of crack cocaine.  Your finding on quantity must

2  be unanimous in the sense that you may not find that the

3  conspiracy involved at least 280 grams or more of crack cocaine

4  unless all of you agree on that fact.  The defendant is

5  responsible for the quantity of drugs involved in any

6  transaction in which he personally participated as part of the

7  conspiracy, whether or not he knew the specific quantity and

8  whether or not it was foreseeable to him, and he is also

9  responsible for quantities that the conspiracy as a whole

10  involved, as long as those amounts were known or foreseeable to

11  him and within the scope of the criminal activity he jointly

12  undertook.

13          Counts Two and Three charge the defendant with

14  committing violent crimes in aid of racketeering activity, in

15  violation of Section 1959 of Title 18 of the United States

16  Code.  This explanation will apply to both of these counts.

17          Count Two charges the defendant with attempting to

18  murder, and aiding and abetting the attempted murder of,

19  individuals affiliated with the Southside gang in aid of

20  racketeering activity.  Count Three charges the defendant with

21  assaulting with a dangerous weapon and attempting to murder an

22  individual, and aiding and abetting the assault and attempted

23  murder of that individual in aid of racketeering activity.

24          The statute relevant to these counts, Section 1959 of

25  Title 18 of the U.S. Code provides that:

170918gayle1                    Trial

1          Whoever...for the purpose of gaining entrance to, or

2    maintaining or increasing position in, an enterprise engaged in

3    racketeering activity, murders, kidnaps, maims, assaults with a

4    dangerous weapon, commits assaults resulting in serious bodily

5    injury upon, or threatens to commit a crime of violence against

6    any individual in violation of the laws of any State or the

7    United States, or attempts or conspires to do so, [is guilty of

8    a crime].

9          To find the defendant guilty of this offense, the

10   government must, prove beyond a reasonable doubt, as to each

11   count each of the following elements:

12         First, that the enterprise charged in Count One

13   existed, that it engaged in racketeering activity, and that it

14   engaged in or its activities affected interstate or foreign

15   commerce;

16         Second, that the defendant committed the underlying

17   crime alleged in the count you are considering; and

18         Third, that the defendant's general purpose in doing

19   so was to gain entrance to the enterprise or maintain or

20   increase his position in the enterprise.

21         I have already defined for you in connection with

22   Count One the concepts of the "enterprise," "affecting

23   interstate commerce," and "racketeering activity," and you

24   should apply those instructions here.  If you find beyond a

25   reasonable doubt that the enterprise did exist, affected

170918gayle1                    Trial

1   interstate commerce, and engaged in racketeering activity as

2   described in Count One, then you must go on to consider the

3   other elements of the charges in Counts Two and Three.

4           The second element of Counts Two and Three is that the

5   defendant committed or aided and abetted the underlying violent

6   crime alleged in the count you are considering – attempted

7   murder for Count Two, and assault with a dangerous weapon and

8   attempted murder for Count Three.

9           I have previously instructed you on the elements of

10  attempted murder under New York State law at pages 39-40, and

11  you should follow those instructions for the counts that allege

12  these crimes.

13          With respect to Count Three, the elements of assault

14  with a deadly weapon are:

15          First, that the perpetrator intended to cause physical

16  injury to another person; and

17          Second, that in accordance with that intent, the

18  perpetrator caused physical injury to that person or a third

19  person by means of a deadly weapon or dangerous instrument.

20          Under the assault statute, a person intends to cause

21  physical injury to another person when his conscious objective

22  is to cause physical injury to another person.  "Physical

23  injury" means impairment of a person's physical condition or

24  substantial pain.

25          Under the assault statute, there is no requirement

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

170918gayle1                    Trial

1   that the person who is injured be the same person who was

2   intended to be injured.  Thus, the intent element is satisfied

3   when the perpetrator intends to physically injure one person,

4   but instead physically injures another person.

5        A "deadly weapon" is any loaded weapon from which a

6   shot, readily capable of producing death or other serious

7   physical injury, may be discharged.  For a firearm to be

8   considered a "deadly weapon," it must be loaded and operable,

9   although there is no requirement that the defendant knew it was

10  loaded or operable at the time he possessed it.  "Loaded" means

11  that the firearm is loaded with ammunition that may be used to

12  discharge such firearm.

13       A "dangerous instrument" is any instrument, article,

14  or substance that, under the circumstances in which it is used,

15  attempted to be used, or threatened to be used, is readily

16  capable of causing death or other serious physical injury,

17  although death or other serious physical injury may not, in

18  fact, be caused.

19       The third element the government must prove beyond a

20  reasonable doubt is that the defendant's purpose in committing

21  the underlying crime was to gain entrance to the Yellow Tape

22  Money Gang enterprise, or to maintain or increase his position

23  within that enterprise.  Your focus on this element is on the

24  general purpose of the defendant.  The government does not need

25  to prove that gaining entrance to or maintaining or increasing

170918gayle1                    Trial

1   position in the enterprise was the defendant's sole or

2   principal motive, so long as one of the those purposes was a

3   substantial motivating factor in the defendant's decision to

4   participate in the underlying crime or crimes.  For example,

5   this element is satisfied if you find that the defendant

6   committed the underlying crime because he knew it was expected

7   of him by reason of his membership in or association with the

8   enterprise, because it would maintain or enhance his position

9   or prestige in the enterprise, or, with respect to a

10  high-ranking member of the enterprise, if he committed or

11  sanctioned the act of violence to protect the enterprise's

12  operations or advance its objectives.  This element could also

13  be satisfied if you find that the defendant committed the

14  underlying crime to enhance his reputation or wealth within the

15  enterprise or to avoid losing power or prestige within the

16  enterprise.  This list of examples is not exhaustive.  It may

17  be exhausting, but it's not exhaustive.

18          You may evaluate the guilt of the defendant on Counts

19  Two and Three under an aiding and abetting theory and a theory

20  of *Pinkerton* liability.  I have previously instructed you on

21  those theories at pages 27-30, and you should follow those

22  instructions with respect to these counts.

23          Give me one second.  Actually, 27-30 is just -- right.

24  Never mind.  I take it back.

25          Moving on to Count Four - we're getting there.

170918gayle1                    Trial

1          Count Four charges the defendant with participating in

2   a conspiracy from in or about 2015, up to and including in or

3   about May 2016, to violate the narcotics laws of the United

4   States – specifically, engaging in a conspiracy to distribute

5   crack cocaine or possess crack cocaine with intent to

6   distribute it.

7          I have instructed you generally on the elements of

8   conspiracy at pages 20–28 and specifically on drug-trafficking

9   conspiracy in connection with Count One at pages 41–45, and you

10  should follow those instructions here.

11         If, and only if, you find the government has proven

12  beyond a reasonable doubt that the defendant participated in

13  the conspiracy charged in Count Four – regardless of whether

14  you find the defendant guilty of Count One – you must then

15  determine the quantity of crack cocaine involved in the

16  conspiracy.  In completing the special interrogatories on drug

17  quantity in connection with Count Four, you should follow the

18  instructions on completing the special interrogatory on drug

19  quantity that I gave you in connection with Count One, except

20  here, rather than simply indicating whether the government has

21  proven beyond a reasonable doubt that the conspiracy involved

22  at least 280 grams of crack cocaine, you'll be given three

23  choices.  You'll be asked to indicate if the government has

24  proven the conspiracy involved at least 280 grams of crack

25  cocaine, at least 28 grams of crack cocaine, or less than 28

170918gayle1                    Trial

1   grams of crack cocaine.

2        Your finding on quantity must be unanimous in the

3   sense that all of you must agree that the conspiracy involved

4   at least the quantity you indicate.  Thus, for example, if all

5   of you agree the conspiracy involved 280 grams or more of

6   mixtures and substances containing a detectable amount of crack

7   cocaine, you should indicate that on the verdict form.  If,

8   however, some of you conclude that the conspiracy involved 28

9   grams or more, but the rest of you conclude that it involved

10  280 grams or more, you must indicate 28 grams or more on the

11  verdict form, because all of you would only be in agreement

12  that the conspiracy involved 28 grams or more of crack cocaine.

13  Similarly, if you conclude that the government has proven that

14  the conspiracy involved a detectable amount of crack cocaine,

15  but you cannot agree that the government has proven any

16  particular amount, you must check the box for "Less than 28

17  grams" on the verdict form.  If you conclude that the

18  government has not proven beyond a reasonable doubt that the

19  conspiracy involved at least 28 grams of crack cocaine, then

20  you may also indicate that on the verdict form.  Actually,

21  disregard that last sentence.

22        You have to be unanimous as to the amount involved.

23  And if some of you think it was at least 28, and others think

24  it was at least 280, you have to default back to 28; and the

25  same thing if some of you believe it was at least 28, and some

170918gayle1                    Trial

1    of you believe it was less than 28, in that case, you would

2    have to default back to less than 28.

3              Count Five charges the defendant with using a minor in

4    the commission of a drug offense, in violation of Section

5    861(a)(1) of Title 21 of the U.S. Code.  For the defendant to

6    be guilty of that charge, the government must prove each of the

7    following elements beyond a reasonable doubt:

8              First, that at or about the time charged in the

9    indictment, the defendant was at least 18 years old;

10             Second, that the defendant knowingly and intentionally

11   employed, hired, used, persuaded, induced, or enticed a minor

12   in the commission of the underlying drug offenses; and

13             Third, that the minor was under the age of 18 years.

14             I've previously instructed you on the meaning of

15   "knowingly" and "intentionally."  You should apply those

16   definitions here.

17             The government is not required to prove that the

18   defendant knew the age of the minor or that he was under 18.

19             Count Six alleges a violation of Section 924(c) of

20   Title 18 of the United States Code, which provides that:

21             Any person who, during and in relation to any crime of

22   violence or drug-trafficking crime...for which the person may

23   be prosecuted in a court of the United States, uses or carries

24   a firearm, or who, in furtherance of any such crime, possesses

25   a firearm, shall [be guilty of a crime].

170918gayle1                    Trial

1          Count Six charges that the defendant knowingly used

2     and carried firearms and aided and abetted the same during and

3     in relation to the racketeering conspiracy charged in Count One

4     and the narcotics conspiracy charged in Count Four of the

5     indictment.  This means that if you find the defendant is not

6     guilty of both the racketeering conspiracy in Count One and the

7     narcotics conspiracy in Count Four, then you cannot consider

8     Count Six.

9          To find that the defendant personally committed the

10    Section 924(c) firearms offense charged in Count Six, the

11    government must prove beyond a reasonable doubt each of the

12    following elements for each count -- actually, there's only one

13    count -- each of the following elements:

14         First, that on or about the date or dates alleged in

15    the indictment, the defendant used or carried or possessed a

16    firearm;

17         Second, that on those occasions, the defendant used or

18    carried the firearm during and in relation to a crime of

19    violence or drug-trafficking crime, or possessed the firearm in

20    furtherance of those crimes; and

21         Third, that the defendant acted knowingly and

22    unlawfully.

23         The first element the government must prove beyond a

24    reasonable doubt is -- we dropped a word -- is that on or about

25    the date set forth in the indictment, the defendant used or

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

170918gayle1                    Trial

1    carried or possessed a firearm.

2            A firearm under Section 924(c) means "any

3    weapon...which will or is designed to or may readily be

4    converted to expel a projectile by the action of an explosive."

5    Common sense tells you that a gun meets the statutory

6    definition of a firearm.  It does not matter whether the gun

7    was loaded or operable at the time of the crime.

8            "Use" of a firearm means active employment of the

9    firearm by the defendant.  This does not mean the defendant

10   must actually fire or attempt to fire the weapon, although

11   those would obviously constitute use of a weapon.  Brandishing,

12   displaying, or even referring to the weapon so that others know

13   the defendant has the firearm available if needed all

14   constitute use of the firearm.  But the mere possession of a

15   firearm at or near the site of the crime without active

16   employment as I just described it is not sufficient to

17   constitute use of the firearm.

18           "Carrying" a firearm is different from "using" it.

19   While use requires active employment of a firearm, "carrying"

20   does not.  A person "carries" a firearm when he knowingly

21   holds, moves, conveys, or transports it in some manner on his

22   person, in a bag, or other container, or in his vehicle.

23           Possession of a firearm means that the defendant

24   either had physical possession of the firearm on his person or

25   that he had dominion and control over the place where the

170918gayle1                    Trial

1   firearm was located, and had the power and intention to

2   exercise control over the firearm.  Mere presence in a place

3   where the firearm is located is not enough.  A person need not

4   have physical custody of an object to be in legal possession of

5   it, so long as he has the ability to exercise substantial

6   control over an object and the intent to exercise -- actually,

7   it shouldn't say the object, it should say the firearm.  So,

8   let me read that again.

9       A person need not have physical custody of a firearm

10  to be in possession of it, to be in legal possession of it, so

11  long as he has the ability to exercise substantial control over

12  the firearm and the intent to exercise such control, and the

13  firearm is immediately available to him.  More than one person

14  can have control over the same firearm.  The law recognizes

15  that possession may be sole or joint.

16      Control over an object may be demonstrated by the

17  existence of a relationship between one person having the power

18  or ability to control the item, and another person who has the

19  actual physical custody.  The person having control "possesses"

20  the firearm because he has a relationship with the person who

21  has actual physical custody of the firearm and because he can

22  direct the movement or transfer or disposition of the firearm.

23  In addition, an individual may have possession of an item that

24  is not found on his person because that individual has a

25  relationship to the location where the item is maintained.  In

170918gayle1                    Trial

1    this matter, for example, a business person may legally possess

2    things that are scattered throughout a number of stores or

3    offices or installations around the country.

4            The second element that the government must prove

5    beyond a reasonable doubt is that the defendant used or carried

6    a firearm during and in relation to a crime of violence or a

7    drug-trafficking crime, or possessed a firearm in furtherance

8    of such crime.  The racketeering conspiracy charged in Count

9    One qualifies as a crime of violence and the narcotics

10   conspiracy alleged in Count Four qualifies as a

11   drug-trafficking offense.

12           The phrase "during and in relation to" should be given

13   its ordinary meaning.

14           "Possessed a firearm in furtherance of a crime"

15   requires both that the defendant had possession of the firearm

16   – either physically because it was within his dominion and

17   control – and that such possession helped forward, advance, or

18   promote the commission of the crime or was an integral part of

19   the crime.  The mere possession of the firearm at the scene of

20   the crime is not sufficient under this definition.  The firearm

21   must have played some essential part in furthering the crime

22   for this element to be satisfied on the basis of the

23   defendant's possession of the firearm.

24           The final element the government must prove beyond a

25   reasonable doubt for Count Six is that the defendant knew that

170918gayle1                    Trial

1   he was carrying or using a firearm during and in relation to

2   the underlying crime, or knew that he was possessing a firearm

3   in furtherance of the underlying crime, and that the defendant

4   acted unlawfully and knowingly in doing so.  I've already

5   defined "unlawfully" and "knowingly."

6           To satisfy this element, you must find that the

7   defendant had knowledge that what he was carrying or using or

8   possessing was a firearm as that term is generally used.  The

9   government must also prove that the defendant knew what he was

10  doing – that he knew that he was carrying or using a firearm

11  during and in relation to the commission of a crime of violence

12  or a drug-trafficking crime or that he was possessing a firearm

13  in furtherance of those crimes.  It is not necessary, however,

14  for the government to prove that the defendant knew that he was

15  violating any particular law.

16          A defendant may be found guilty of violating Section

17  924(c), which is the statute underlying Count Six under an

18  aiding and abetting theory or under a *Pinkerton* theory, as

19  described in my instructions at pages 27-30.  In addition, I

20  must give you some specific instructions regarding aiding and

21  abetting as it applies to this count only.

22          To convict the defendant of aiding and abetting the

23  crime charged in Count Six, you must find that the defendant

24  facilitated either the use, carrying, or possession of the

25  firearm or the commission of the charged violent crime or

170918gayle1                    Trial

1    drug-trafficking crime.  It is not necessary that the defendant

2    facilitate both of the possession, use, or carrying of the

3    firearm and the crime of violence or drug-trafficking crime.

4          To convict the defendant of this offense on an aiding

5    an abetting theory, you must also find that the defendant had

6    advance knowledge, that a participant in the crime of violence

7    or drug-trafficking crime would use, carry, or possess a

8    firearm in furtherance of the crime of violence or

9    drug-trafficking crime.  Advance knowledge means knowledge at a

10   time when the defendant can attempt to alter the plan or

11   withdraw from it.  Knowledge of the gun may, but does not have

12   to, exist before the underlying crime is begun.  It is

13   sufficient if the knowledge is gained in the middle of the

14   underlying crime, so long as the defendant continues to

15   participate in the crime and has a realistic opportunity to

16   withdraw from it.  You may, but need not, infer that the

17   defendant had sufficient foreknowledge if you find that the

18   defendant continued his participation in the crime after

19   learning about the use, carrying, or possession of a gun by a

20   co-conspirator.

21         In other words, as to aiding and abetting the offense

22   charged in Count Six, the government must prove beyond a

23   reasonable doubt that the defendant facilitated either the use,

24   carrying, or possession of the firearm, or the commission of

25   the charged crime of violence or drug-trafficking crime, and

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

170918gayle1                    Trial

1   had knowledge of the firearm when he still had a realistic

2   opportunity to withdraw from the crime of violence or

3   drug-trafficking crime.

4            If you find the defendant guilty on Count Six, you

5   must indicate in the space provided on the verdict form whether

6   you find that the government has proven beyond a reasonable

7   doubt that the defendant is responsible for brandishing and/or

8   discharging a firearm during the use, carrying, or possession

9   of the firearm.  Your finding as to the fact you are

10  considering must be unanimous in the sense that all of you must

11  agree that the defendant is responsible for brandishing and/or

12  discharging a firearm.

13           You must unanimously -- well, that sentence -- the

14  next sentence is just repetition.  That's just a mistake.

15           You should apply here my federal aiding and abetting

16  instructions and my instructions regarding *Pinkerton* liability

17  at pages 27-30.

18           "Brandish" means that all or part of the weapon was

19  displayed or the presence of the weapon was otherwise made

20  known to another person, to intimidate that person, regardless

21  of whether the weapon was directly visible to that person.  The

22  weapon does not have to be directly visible, but it must be

23  present.

24           A defendant is guilty of aiding and abetting the

25  brandishing of a firearm if he is guilty of a firearms offense,

170918gayle1                    Trial

1    and if he had advance knowledge that another participant in a

2    crime of violence or drug-trafficking crime would display the

3    firearm or make the presence of the firearm known for purposes

4    of intimidation.

5         To "discharge" means to fire or shoot, whether

6    intentionally or accidently.  To aid and abet the possession or

7    carrying of a firearm that was discharged, the defendant need

8    not have advance knowledge that the discharge would occur.  If

9    you conclude that the defendant is guilty of Count Six and that

10   the firearm or firearms in question were discharged, you should

11   check "YES" next to the line for "discharged" on the verdict

12   form.

13        Count Seven charges the defendant with tampering and

14   attempting to tamper with a witness, in violation of Section

15   1512 of Title 18 of the United States Code, which provides, in

16   relevant part, "Whoever corruptly...obstructs, influences, or

17   impedes any official proceeding, or attempts to do so," shall

18   be guilty of the offense.

19        To prove tampering with a witness, the government must

20   prove the following elements beyond a reasonable doubt:

21        First, that on or about the dates alleged in the

22   indictment, an official proceeding was pending, was about to be

23   instituted, or was reasonably foreseeable to the defendant; and

24        Second, that the defendant obstructed, influenced, or

25   impeded that official proceeding, or attempted to do so; and

170918gayle1                     Trial

1          Third, that the defendant acted corruptly.

2          The first element the government must prove is that on

3   or about the dates alleged in the indictment, an official

4   proceeding was pending, about to be instituted, or reasonably

5   foreseeable to the defendant.

6          An official proceeding means a proceeding before a

7   court, judge, grand jury, or federal agency.  The law does not

8   require the proceeding to be pending at the time of the

9   defendant's actions as long as the proceeding was foreseeable

10  such that the defendant knew that his actions were likely to

11  affect the proceeding.

12         A federal criminal case pending before the Court is an

13  official proceeding within the meaning of this statute.

14         The second element that the government must prove

15  beyond a reasonable doubt is that on or about the dates alleged

16  in the indictment, the defendant obstructed, influenced, or

17  impeded that official proceeding, or attempted to do so.

18         To obstruct, influence, or impede an official

19  proceeding, or attempt to do so, the defendant's actions must

20  have a relationship in time, causation, or logic to the

21  relevant proceedings.  It is not necessary for the defendant to

22  know with certainty that his conduct would affect the official

23  proceeding, nor is it necessary that the defendant's conduct

24  actually obstructs or influences the official proceeding.  It

25  is sufficient that the defendant's actions would have the

170918gayle1                    Trial

1    natural effect of interfering with the official proceeding.

2           The third element that the government must prove

3    beyond a reasonable doubt is that on or about the dates alleged

4    in the indictment, the defendant acted corruptly in doing so.

5    To act corruptly means to act with an improper purpose and to

6    engage in conduct knowingly and dishonestly and with the intent

7    to obstruct, impede, or influence the due administration of

8    justice.

9           I have now told you the elements of the charges in the

10   indictment.  I hope your heads aren't spinning.  In addition to

11   the elements I have described to you, the government, as to

12   each charge, must prove that this prosecution has been brought

13   properly in the Southern District of New York where we now sit.

14   The Southern District of New York includes Orange County, which

15   includes Newburgh, and the Southern District includes

16   Westchester County, which includes the Westchester County jail

17   in Valhalla, New York.

18          I note on the issue of venue and on this issue alone,

19   the government need not prove its position beyond a reasonable

20   doubt.  It is sufficient if the government proves venue by a

21   mere preponderance of the evidence.  A proposition is proven by

22   a preponderance of the evidence if you conclude that it is more

23   likely true than not.

24          If you find that the government has failed to meet

25   this venue requirement with regard to any of the charges, you

170918gayle1                    Trial

1    must acquit the defendant of that charge.

2           In a few minutes, you will go into the jury room and

3    begin your deliberations.  It is your duty as jurors to consult

4    with one another and to deliberate with a view to reaching an

5    agreement.  Each of you must decide the case for yourself, but

6    you should do so only after consideration of the case with your

7    fellow jurors.  Your verdict, and the answers to each question

8    on the verdict form, must be unanimous.  Discuss and weigh your

9    respective opinions dispassionately, without regard to

10   sympathy, without prejudice or favor toward any party, and

11   adopt that conclusion which in your good conscience appears to

12   be in accordance with the evidence.

13          As you deliberate, please listen to the opinions of

14   your fellow juror and ask for an opportunity to express your

15   own views.  Every juror should be heard.  No one juror should

16   hold center stage in the jury room, and no one juror should

17   control or monopolize the deliberations.  You should all listen

18   to one another with courtesy and respect.  If, after stating

19   your own view, and if, after listening to your fellow jurors,

20   you become convinced that your view is wrong, do not hesitate

21   because of stubbornness or pride to change your view.  On the

22   other hand, do not surrender your honest opinions and beliefs

23   concerning the weight or effect of the evidence solely because

24   of the opinions of your fellow jurors or because you are

25   outnumbered or for the mere purpose of returning a verdict.

170918gayle1                    Trial

1    Your final vote must reflect your conscientious belief as to

2    how the issues should be decided.  Your verdict must be

3    unanimous.

4            You are not to discuss the case until all jurors are

5    present.  Nine, ten or even eleven jurors together is only a

6    gathering of individuals.  Only when all 12 jurors are present

7    do you constitute a jury and only then may you deliberate.

8            Your first task when you retire to deliberate is to

9    vote on one of you to sit as your foreperson.  The foreperson

10   does not have any more power or authority than any other juror,

11   and his or her vote or opinion does not count for any more than

12   any other juror's vote or opinion.

13           The foreperson is merely your spokesperson to the

14   Court.  He or she will send out any notes, and when the jury

15   has reached a verdict, he or she will notify the marshal that

16   the jury has reached a verdict, and he or she will come into

17   open court with the other jurors and give the verdict.

18           The foreperson will receive the verdict form on which

19   to record your verdict.  You will also each have copies of the

20   verdict form.  It lists the questions you must resolve based on

21   the evidence and the instructions that I have given you.

22           When the foreperson has completed the form to reflect

23   the unanimous decisions of the jury, he or she must sign the

24   form and the form will be marked as a Court Exhibit.

25           The exhibits will be sent to you in the jury room,

170918gayle1                    Trial

1   except for the drugs, guns, and ammunition, and also, I am

2   told, except for Government Exhibit 213, which is the video of

3   the white car.  That requires special software that we were

4   unable to load into the laptop that you will have in the jury

5   room.  So, you'll be able to listen to and view all of the

6   recordings except for Exhibit 213 on that laptop that we're

7   going to send back with you.  If you want to see 213, you can

8   come back in the courtroom.  So, 213, the drugs, the guns and

9   the ammunition will be available to you in the courtroom if you

10  wish to review them.

11          If you want any of the testimony read back to you,

12  that can be arranged.  Please appreciate that it is not always

13  easy to locate the testimony you might want, so be as specific

14  as you possibly can as to what witness and what portion of that

15  witness' testimony you would like to hear.

16          Any communication with the Court should be made in

17  writing, signed by your foreperson, and given to the marshal,

18  who will be outside the jury room door while you deliberate.  I

19  will respond to any questions or requests you have as promptly

20  as possible, either in writing or by having you return to the

21  courtroom so I can speak to you in person.  But please

22  appreciate that I have to share your notes with the lawyers,

23  and they will have opinions as to how I should respond, so

24  don't expect an instantaneous response if you have a question.

25          If at any time you are not in agreement, you are not

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

170918gayle1                    Trial

1    to reveal the standing of the jurors – that is, the split of

2    the vote – to anyone, including me, at any time during your

3    deliberations.  So do not ever indicate, in a note or

4    otherwise, what the vote is or which way the majority of

5    leaning or anything like that.  Nobody outside the jury should

6    know how the jury stands on any issue until a unanimous verdict

7    is reached.

8         If you took notes during the course of the trial, you

9    should not show your notes to or discuss your notes with any

10   other juror during your deliberations.

11        Any notes you have taken are to be used solely to

12   assist you.  The fact that a particular juror has taken notes

13   entitles that juror's views to no greater weight than those of

14   any other juror.

15        Further, your notes are not to substitute for your

16   recollection of the evidence in the case.  If you have any

17   doubt as to any testimony, you may request that the testimony

18   be read back to you, as I mentioned a moment ago.

19        Under your oath as jurors, you are to evaluate the

20   evidence calmly and objectively, without prejudice or sympathy.

21   You are to be completely fair and impartial.  You are to be

22   guided solely by the evidence or the lack of evidence in the

23   case, and the crucial bottom-line question you must ask

24   yourself as you sift through the evidence is, "Has the

25   government proven the elements of the crimes charged in each

170918gayle1                    Trial

1    count beyond a reasonable doubt?"

2            It would be improper for you to consider, in deciding

3    the facts of the case, any personal feelings you may have about

4    the race, religion, national origin, sex, sexual orientation,

5    disability, or age of any party or witness, or any other such

6    irrelevant factor.  It would be equally improper for you to

7    allow any feelings you might have about the nature of the

8    crimes charged to interfere with your decision-making process.

9            All parties are entitled to the same fair trial at

10   your hands.  They stand equal before the law and are to be

11   dealt with as equals in this court.  If you let fear or

12   prejudice or bias or sympathy interfere with your thinking,

13   there is a risk that you will not arrive at a true and just

14   verdict.

15           The most important part of this case, Members of the

16   Jury, is the part that you as jurors are about to play as you

17   deliberate on the issues of fact.

18           It is for you and you alone to decide whether the

19   government has proven beyond a reasonable doubt each of the

20   essential elements of the crimes with which the defendant is

21   charged.  If the government has succeeded on a particular

22   count, your verdict should be guilty as to that count.  Another

23   typo.  If it has failed, your verdict should be not guilty.

24           I know you will try the issues that have been

25   presented to you according to the oath that you have taken as

170918gayle1                     Trial

1   jurors.  In that oath, you promised that you would well and

2   truly try the issues in this case and render a true verdict

3   according to the law and the evidence.

4        As I previously stated, your verdict must be

5   unanimous.  Again, if at any time you are not in agreement, you

6   are not to reveal the standing of the jurors – that is, the

7   split of the vote – to anyone, including me, at any time during

8   your deliberations.

9        Now, let me ask your patience for a few moments

10  longer.  I have to spend a few moments with counsel at the side

11  bar.  I'll ask you to remain where you are without talking, and

12  I will be back in a minute.

13        (At the side bar)

14        THE COURT:  Did I mess anything up?

15        MR. BRAVERMAN:  I don't think so.  I just had one

16  question.

17        MS. COMEY:  We have nothing.

18        MR. BRAVERMAN:  On the verdict sheet, and I'm just

19  tired, so maybe I'm confused, but on the verdict sheet, with

20  respect to brandish and discharge, I believe in reading and

21  listening to it again, is it clear that they don't have to

22  decide brandish or discharge; that they, like, the drugs, they

23  can be less than 28 grams or they can be a –– just use –– take

24  a look at the verdict form really fast.

25        THE COURT:  It says, "If you find him guilty on Count

SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
(914)390-4053

170918gayle1                    Trial

1   Six, please indicate if you also found him responsible..."

2           MR. BRAVERMAN:  "Also" is in there.

3           THE COURT:  It's on the verdict form.

4           MR. BRAVERMAN:  On the verdict form.  Perfect.  That's

5   what I want.

6           THE COURT:  I see what you're saying.  You want me --

7           MR. BRAVERMAN:  Because the instruction I think

8   doesn't say the "also" thing.

9           THE COURT:  You want me to tell them that on Count

10  Six, they have three options:  They can find he's guilty of

11  Count Six without brandishing or discharging --

12          MR. BRAVERMAN:  Yes.

13          THE COURT:  He's guilty of Count Six, and he also

14  brandished, or he's guilty of Count Six, and he also

15  discharged?

16          MR. BRAVERMAN:  Exactly.

17          THE COURT:  Or there's actually four.  He brandished

18  and discharged.

19          MR. BRAVERMAN:  Yes; I guess that true.

20          THE COURT:  Okay.  It's clear in the verdict form, but

21  it may not have been clear on what I said, so I'll just tell

22  them that.  That's fine.

23          MR. BRAVERMAN:  Other than that, no objections.

24          THE COURT:  Okay.

25          (In open court)

170918gayle1                    Trial

1      THE COURT:  Just one clarification on note six.  I'm

2  not sure if I made this clear.

3      You're going to first be asked whether you find the

4  defendant guilty on Count Six.  If you do, then you'll have to

5  consider whether the firearm was brandished and whether it was

6  discharged.

7      So, on Count Six, you have four options -- well, five,

8  actually:  You have, He's not guilty of Count Six.  You have,

9  He's guilty of Count Six.  You have, He's guilty of Count Six

10  and he's responsible for brandishing.  You have, He's guilty of

11  Count Six and the firearm was discharged.  Or you have, He's

12  guilty of Count Six and it was both brandished and discharged.

13      So, I just want to make clear that if you find the

14  defendant guilty of Count Six, then you'll go on to consider

15  brandishing and discharge, but you don't get to that unless you

16  find the defendant guilty of Count Six.  And as with any other

17  decision you're making here on this verdict form, you have to

18  be unanimous.

19      So, if some of you think that the firearm was

20  discharged and others of you think not, then you can't check

21  the box for discharge; you can only check it if you all agree.

22      So, I hope that didn't make things more confusing.

23  So, that is it for the instructions.  And now comes the part

24  that I always dislike, which is saying good-bye to the

25  alternates.

170918gayle1                    Trial

1           At this time, the regular jurors are going to begin

2      their deliberations in the case.  Nevertheless, you alternates

3      are not quite excused.  While the jury conducts its

4      deliberations, you do not have to be in court, but you should

5      make sure Ms. Cama has numbers where you can be reached,

6      because it is possible that one or more of you could be needed

7      to deliberate if a regular juror becomes unable to continue.

8           Ms. Cama will call you if deliberations are completed

9      without our needing you so that you know when you are

10     completely finished.

11          Between now and then, however, you must continue to

12     observe all of the restrictions on which I have instructed you

13     throughout the trial; that is, you must not discuss the case

14     with anyone, including your fellow alternate jurors, the

15     regular jurors, other people involved in the trial, members of

16     your family, friends, co-workers, or anyone else.  Do not speak

17     at all with any of the parties, witnesses, or attorneys.  Do

18     not permit anyone to discuss the case with you.  Do not remain

19     in the presence of anyone discussing the case.

20          If anyone approaches you and tries to talk to you

21     about the case, please report that to me through Ms. Cama

22     immediately.  Do not listen to or watch or read any news

23     reports concerning the trial, if there were to be any.  Do not

24     do any research on the Internet or otherwise.  And do not visit

25     any places mentioned during the trial or conduct any kind of

170918gayle1                    Trial

1   investigation on your own.

2           Should you be asked to come back to participate in

3   reaching a verdict in this case, the only information you will

4   be allowed to consider in deciding the case is what you learned

5   in this courtroom during the trial.  I'm sorry that you will

6   probably miss the experience of deliberating with a jury, but

7   the law provides for a jury of 12 persons in this case.

8           Now, we are going to swear the marshal, and then you

9   can all go back to the jury room together.  The alternates

10  should take their belongings and say their good-byes.  The

11  regular jurors should not deliberate until the alternates have

12  departed.

13          Let me ask the marshal to come forward to be sworn.

14          (Marshal sworn)

15          THE CLERK:  State your name for the record.

16          THE MARSHAL:  Carlos Bedoya, B-E-D-O-Y-A.

17          THE COURT:  All right, ladies and gentlemen.  After

18  weeks of hearing me say "Don't discuss the case," I'm now going

19  to ask the first 12 of you, once the four alternatives are

20  gone, to begin discussing the case.

21          I assume you'll go at least until 5:00 today.  If you

22  want to stay a little later, that's okay.  If I haven't heard

23  from you, I will call you out at 5:00 just to say good evening

24  and to find out what schedule you want to sit tomorrow.  Again,

25  there is no time pressure here.  You should take as much time

170918gayle1                    Trial

1    as you need to consider everything that's been put before you

2    in terms of evidence and law.

3           In a moment, Ms. Cama is going to bring back the

4    exhibits, and she will also bring back the verdict sheet and

5    copies for all of you.

6           And I think when you've had a chance to look over the

7    verdict sheet, that will help you focus on your task and help

8    you organize your deliberations.

9           With that, good-bye to the alternates.  Thank you very

10   much for your service.  You are off the hook for jury duty for

11   four years, at least in this court.

12          And the rest of you, the 12 regular jurors, as soon as

13   the alternates have departed, you can begin your deliberations.

14          Thank you.

15          (Alternate jurors are excused)

16          (At 3:10 p.m., the jury retired to deliberate)

17          (Jury not present)

18          THE COURT:  The government, if you're not going to be

19   at your desks, give Ms. Cama your cell numbers.

20          And Mr. Braverman, if you're going to not be on the

21   sixth floor, give Alice your cell so she can track you down,

22   but don't go far.

23          MR. BRAVERMAN:  I promise.

24          THE COURT:  Thank you all.

25          MS. COMEY:  Thank you, your Honor.

170918gayle1                    Trial

1          THE CLERK:  Have both sides put on the record with the

2   court reporter that all the exhibits that are supposed to go in

3   are there and going in; and nothing that's not supposed to be

4   in is there and not going in?

5          MR. BRAVERMAN:  I'll get my stipulation now --

6          THE CLERK:  Because I can't give them exhibits until

7   you do that.

8          MR. BRAVERMAN:  Someone is going to unlock the door

9   for me?

10          THE COURT:  But you've looked at what the government

11   proposes to send in and it's fine?

12          MR. BRAVERMAN:  Yes.  That's fine.

13          THE COURT:  All right.  So it's just Exhibit D.

14          MR. BRAVERMAN:  Exhibit D.

15          THE COURT:  So Alice, he needs you to unlock --

16          THE CLERK:  I'm going to get the keys.

17          (Pause)

18          MR. BRAVERMAN:  I have conferred with the government.

19   We have examined the exhibit lists.  And all the items that the

20   Judge indicated that are in the exhibit cart are, in fact, in

21   the exhibit cart.  The only thing left is the contraband and

22   the disk for the video that cannot be viewed on the laptop.

23          MS. COMEY:  Which is Exhibit 213.

24          (Recess pending verdict)

25

170918gayle1                    Trial

1              (In open court; jury not present)

2              THE COURT:  We have a note that we have marked as

3     Court Exhibit 5.  Court Exhibit 4 will be the charge.

4              It reads as follows:  "We, the Jury, request

5     the testimony of Laquan Falls and Brendan Germaine.  We would

6     also like more clarification on the ages of David Brown and

7     Armad Evans during the time of the investigation."  And it's

8     signed by Ms. Alexandre, who is Juror No. 1.

9              So they obviously don't understand how it works.

10    We're clearly not going to read back Laquan Falls and Brendan

11    Germaine.  We'd be here for a week.

12             But I think overnight, the parties can redact out the

13    side bars and objections that were sustained, and we can give

14    it to them in the morning.  Or I can call them back out and

15    tell them you don't really want us reading the whole thing,

16    come up with something more specific, but my impression is that

17    they want a transcript, because I don't think they really want

18    a full read-back.

19             What do you think on that?

20             MR. BRAVERMAN:  I agree with the Court.  And the

21    government also reminded me that Police Officer Rodriguez did

22    speak on the subject of David Brown and Armad Evans on pages 96

23    to 97.  That's only two pages there.  It's fairly short.  There

24    may be a second one.  I will look again.  Laquan Falls runs

25    about 187 pages, and Mr. Germaine runs about -- more than

170918gayle1                    Trial

1   300 --

2           THE COURT:  Well, I guess --

3           MR. BRAVERMAN:  -- at least.

4           THE COURT:  I say we can prepare the transcript.  That

5   is my way of saying the government can prepare the transcript.

6           MS. COMEY:  Yes, your Honor.  We're happy to do so.

7           THE COURT:  So within the transcript of Falls and

8   Germaine, there's testimony about the ages of Brown and Evans.

9           MS. COMEY:  Yes, your Honor.

10          THE COURT:  And the only other witness who talked

11  about it was --

12          MS. COMEY:  Was Detective Rodriguez.  There's also

13  information that's relevant to this point within the broader

14  Facebook extracts that are admitted in evidence.  So, we would

15  propose a few pages to direct their attention to, as well.  We

16  can come up with those at the same time that will we're putting

17  together the transcripts.

18          THE COURT:  So, why don't I tell them that we'll have

19  the full transcripts of Falls and Germaine in the morning, that

20  they both spoke about the ages of Brown and Evans, and that we

21  will also give them the excerpts of Rodriguez -- it was

22  Detective Rodriguez --

23          MS. COMEY:  Yes, your Honor.

24          THE COURT:  -- who spoke about the ages of one of them

25  or both of them?

170918gayle1                    Trial

1           MS. COMEY:  I believe both of them, your Honor, though

2    I need to check to confirm.

3           MR. BRAVERMAN:  I found Evans, but I haven't found

4    Brown yet, but I just looked.

5           THE COURT:  All right.  And that we will also have for

6    them in the morning particular pages of Facebook posts that are

7    relevant.  So, I could call them out and tell them or I could

8    just write them a note.  Why don't I write them a note.

9           MR. BRAVERMAN:  Well, it's already 4:40.  I don't know

10   when the Court intends to keep them today anyway.

11          THE COURT:  I was going to have them come out at 5:00.

12   I guess I can have them come out now and tell them what we plan

13   to do.  I can ask them how long they want to stay, and if they

14   say they want to leave at 5:00, I can tell them leave when

15   you're ready.

16          You want to have them come in.

17          (Jury present; time noted: 3:43 p.m.)

18          THE COURT:  Hi, ladies and gentlemen.

19          I read your note.  Assume when you say you want

20   the testimony of Laquan Falls and Brendan Germaine, you don't

21   want us sitting here for days while we read it back; you want a

22   transcript of it?

23          A JUROR:  Yes.

24          THE COURT:  We can do that, but we have to go through

25   it and redact out all the side bars, all the discussion that

170918gayle1                    Trial

1    took place while you were in the jury room, all the objections

2    that were sustained.  So we will do that tonight and have that

3    for you in the morning.

4          You also asked for more clarification on the ages of

5    David Brown and Armad Evans during the time of the

6    investigation.  Falls and Germaine both mentioned that issue

7    during their testimony.  In addition, Detective Rodriguez

8    mentioned the ages of one or both of them.  We'll have that for

9    you in the morning.  And in addition, there are Facebook pages

10   relevant to that issue and we will, in the morning, be able to

11   direct you to particular Facebook pages.

12         So I can't summarize any evidence for you or clarify

13   anything for you, but I can, with the aid of the lawyers, point

14   you to evidence that's relevant on that subject, and we'll have

15   that for you in the morning.

16         Have you thought about how long you want to stay

17   tonight?

18         A JUROR:  5:00.

19         THE COURT:  So, unless you have another note when it

20   gets to be 5:00, you don't have to come back out here, just

21   depart, and tomorrow you want to come at --

22         A JUROR:  9:30.

23         THE COURT:  And you'll stay until 5:00 or until you

24   finish?  That's fine.  We will have this all ready for you at

25   9:30 hopefully.

170918gayle1                    Trial

1          So you can resume your deliberations now and go until

2     5:00 and then depart.  But just remember, it is as important as

3     ever, maybe even more so that you not talk about the case with

4     anyone except each other.  Don't do any research, don't look

5     anything up.  Don't expose yourself to anything relating to the

6     case outside the courtroom.  Don't let anyone try to talk to

7     you about it.  In the morning, don't start discussing the case

8     until all 12 of you are present.

9          And we'll have the coffee waiting for you and Alice

10    tells me tomorrow we're going to try something different for

11    lunch.  That will be the thrill to look forward to.

12          So, unless you have anymore questions between now and

13    5:00, I'll see you in the morning.  Have a good evening.

14          (Jury deliberations resumed; time noted:  3:46 p.m.)

15          THE COURT:  So logistically, I guess it's easy in the

16    sense that it's going to be the entire testimony of Brown and

17    Evans.  We just need to take out the side bars, the sustained

18    objections.

19          The government is going to do that tonight.

20          MS. COMEY:  Yes, your Honor.

21          THE COURT:  Can you send it to Mr. Braverman so he can

22    look at it tonight?

23          MR. BRAVERMAN:  I'll try to come up with a list as

24    well, and we have everybody's cellphone numbers.  We'll stay in

25    touch.

170918gayle1                    Trial

1              THE COURT:  Why don't we reconvene at 9:15, just to

2       make sure we're on the same page.

3              MS. COMEY:  How many copies would you like us to

4       prepare, assuming we agree on redactions?

5              THE COURT:  That's a good question.

6              MR. BRAVERMAN:  When you say -- three or four is

7       enough.  I don't think we need 12.

8              THE COURT:  I don't think they really need 12.  Why

9       don't we send in three, and we can tell them if they want more,

10      we'll make more.  I just don't want to kill too many trees.

11             I'm looking at Rodriguez's testimony.

12             MS. COMEY:  I believe page 95 and 97 contain the

13      relevant testimony.

14             THE COURT:  Page 95 refers back to something, because

15      the question is, you said about Armad Evans being about age 17,

16      so there must have been something before that.

17             Unless the premise of the question --

18             MS. COMEY:  It's 94.  I apologize, your Honor.  It

19      begins on 94:

20             "Were you also able to learn his date of birth?"

21             "Yes."

22             "How old was he at the time?"

23             "17."

24             THE COURT:  So, 94-95.  And then 97, I got to say,

25      that is hearsay, but there was no objection.  I guess it's in

SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
(914)390-4053

170918gayle1                    Trial

1   there.

2            MR. BRAVERMAN:  My *voir dire*?

3            THE COURT:  No.  The question was:

4            "From your internal system, were you able to determine

5   how old he was?"

6            "Yes."

7            "How old was he?"

8            "17."

9            I mean, what the internal system says is hearsay, but

10  there was no objection.

11           MS. COMEY:  Your Honor, I would proffer I believe we

12  could have laid a foundation that it was business records, the

13  internal system of the City of Newburgh Police Department had

14  such an objection been made.

15           THE COURT:  Well, there was no objection, so it's in

16  the transcript.

17           I'm not sure Rodriguez would have been able to say

18  that the information about Mr. Brown's date of birth that was

19  in there came from someone with knowledge, but he might have

20  been able to.  I don't rule it out.  But you couldn't have a

21  cop testify, I ran the plate and it's registered to so-and-so.

22  That's hearsay, and this is similar.  Although, maybe the

23  officer could have laid the foundation.  But there was no

24  objection, and there's no, I don't think, argument that David

25  Brown wasn't 17 at the time.  It's in the record, so they'll

170918gayle1                  Trial

1   consider it.

2           Are the Facebook pages you're talking about ones that

3   have not been cut out?  They're somewhere on those disks?

4           MS. COMEY:  Yes, your Honor.  So, we would need to

5   look through and figure out where they are, but we would send

6   pages to Mr. Braverman for him to consider.

7           THE COURT:  Is there a way to search them so you get

8   all of them?

9           MS. COMEY:  They are searchable by a Control F

10  function, so to the extent you want to --

11          THE COURT:  So, you can put in "birthday, age 18."

12  All right.  If the search captures everything, that would be

13  too bad, but Mr. Braverman should feel -- you should propose

14  search terms.

15          MR. BRAVERMAN:  Yes.

16          THE COURT:  I assume the government has some in mind.

17          MS. COMEY:  Yes, your Honor.

18          THE COURT:  But if they're all going to search

19  birthday or 18, if you can think of other words you'd like them

20  to search, let them know early.

21

22

23

24

25          (Continued on the following page)

170918gayle1                    Trial

1           MR. BRAVERMAN:  Absolutely.

2           THE COURT:  All right.  I'll see you at 9:15.

3           MR. BRAVERMAN:  Thank you.

4           THE COURT:  Thank you.

5           (Jury excused; time noted: 5:00 p.m.)

6           (Continued on next page)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

170918gayle1                    Trial

1          (Adjourned to September 19, 2017 at 9:15 a.m.)

2                              * * *

3                    - - -

4    Certified to be a true and correct

5    transcript of the stenographic record

6    to the best of my ability.

7    _____

8    U.S. District Court
     Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25