170919gayle1                          Trial

 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  UNITED STATES OF AMERICA

 4           v.                              S8 16 Cr. 361(CS)

 5  TYRIN GAYLE,

 6                  Defendant.

 7  ------------------------------x
                                      United States Courthouse
 8                                    White Plains, N.Y.
                                      September 19, 2017
 9                                    9:15 a.m.

10

11  Before:

12                    THE HONORABLE CATHY SEIBEL,

13                                            District Judge

14                            APPEARANCES

15

16  JOON H. KIM
         Acting United States Attorney for the
         Southern District of New York
17  MAURENE COMEY
    LAUREN SCHORR
18  JACQUELINE KELLY
         Assistant United States Attorneys
19
    FASULO, BRAVERMAN & DiMAGGIO, LLP
20       Attorneys for Defendant Tyrin Gayle
    SAM BRAVERMAN
21  LOUIS FASULO
    MICHAEL GIORDANO
22

23

24

25

              SABRINA A. D'EMIDIO – OFFICIAL COURT REPORTER
                          (914)390-4053

170919gayle1                    Trial

1          (In open court; case called; jury not present)

2          THE COURT:  What have you got for me?

3          MR. BRAVERMAN:  Judge, I think we're in pretty good

4    shape here.  The government has proposed or submitted to me

5    last night redline copies for Falls' testimony and for

6    Germaine's testimony, striking the portions that should be

7    excluded.  And we have come to an agreement with respect to the

8    larger version for Falls and Germaine, that's the nearly-full

9    transcript for each of them, and we're in agreement on those,

10   so that's easy.

11         THE COURT:  Do we have them copied and all that?

12         MS. COMEY:  Ms. Becker is printing them right now,

13   your Honor.  There was one change that Mr. Braverman asked for,

14   which we agreed to, so she's making that and bringing up new

15   copies.

16         THE COURT:  Okay.

17         MR. BRAVERMAN:  We should have that in a few moments.

18         Then with respect to Rodriguez, the redline version of

19   him I agree as well, so that's easy.

20         THE COURT:  Okay.

21         MR. BRAVERMAN:  Then we are looking at -- there are

22   two different pics from Facebook, and we are in agreement on

23   those.  So, those are already in evidence.  It's just a

24   question of, again, finding the pieces within evidence that's

25   already in front of them.  They already have the photographs.

170919gayle1                    Trial

1          THE COURT:  It's just flagging particular --

2          MR. BRAVERMAN:  The ones that are on point.

3          THE COURT:  How will the jury find them?  Are they

4    Bates numbered?

5          MR. BRAVERMAN:  We're actually going to print them

6    out --

7          THE COURT:  That will makes sense.

8          MR. BRAVERMAN:  -- to the pages, we'll print them out.

9    I hope that they don't say, We'd like the odd-numbered pages

10   from 1 to 82,000, but if they do, they do.  So be it.

11         THE COURT:  They can look at those on the screen, if

12   they want.

13         MS. BRAVERMAN:  So, we just have to wait for

14   Ms. Becker and then we're good?

15         MS. COMEY:  Yes, your Honor.

16         THE COURT:  All right.

17         Unless anyone objects, I would have Alice bring the

18   stuff in and tell them they can start deliberating as soon as

19   all 12 are there, and what I would propose to do is tell

20   them -- I happen to have a lunch meeting at 1:00, so I'm going

21   to tell them that I'm going to let you guys go to lunch at

22   1:00.  I'm going to go to lunch at 1:00.  So if they have a

23   note between 1:00 and 2:00, we're probably not going to get

24   back to them right away, and then we'll wait and see.

25         MR. BRAVERMAN:  That's fine.

170919gayle1                    Trial

 1            (Recess)

 2            (Jury deliberations resumed; time noted:  9:30 a.m.)

 3            (In open court; jury not present)

 4            THE COURT:  Good morning, everyone.

 5            MS. COMEY:  Good morning.

 6            THE COURT:  We have a note, which is Court Exhibit 6.

 7   It reads, "We the jury request to see the traffic footage from

 8   Chambers Street from the February 21, 2016 incident."

 9            I see Ms. Becker working on queuing it up.  We had

10   originally seen it in realtime and slowed down.  I guess I can

11   ask them if they -- I guess we can either play it regular

12   speed, and then they'll tell me if they want to see it going

13   slower, or I could ask them.

14            MS. KELLY:  We were just discussing, prior to coming

15   out, what clip, what time period to show of the video.

16            During Sergeant Lahar's testimony, we showed them

17   approximately a minute and-a-half of the video.  I understand

18   Mr. Braverman wants to go back a few minutes more in the video.

19            The government doesn't object to showing a longer

20   clip, however, we would just want to note for the record what

21   had been previously shown to the jury.

22            THE COURT:  So, you want to show, Mr. Braverman,

23   portions they haven't seen yet?

24            MR. BRAVERMAN:  It's all in evidence, and there's

25   approximately four more minutes beforehand that I'd like to

                SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
                            (914)390-4053

170919gayle1                    Trial

1   show.  Obviously, it's not a burdensome thing to show them.

2   And I'd like to show them that's the four minutes leading up to

3   it.  So, I would like to start at approximately 10:45.  The

4   clip that was shown in court, a clip of the larger exhibit in

5   evidence which started at approximately 10:50 and change.

6          THE COURT:  What is it between 10:45 and 10:50 that's

7   shown on the video?

8          MR. BRAVERMAN:  There's an additional white car, an

9   additional light-colored car that comes through the

10  intersection in the direction previously described.  It's in

11  evidence.

12         THE COURT:  I'm sure it's in evidence, but I don't

13  know that it's what they're asking for.  You could have shown

14  it if it were important.

15         Obviously, you don't have -- well, I shouldn't say

16  "obviously."  But I gather that you don't see people sprinting

17  away from the scene after those white cars pass.

18         MR. BRAVERMAN:  I don't, that's correct, I don't.  But

19  that is -- certainly as the government made its argument at

20  closing.  They could argue as they wish and they did.

21  Nonetheless, compared also to the Facebook request that we had

22  earlier, in response to the jurors' note earlier, we gave them

23  clips from the Facebook.  They are in evidence -- they were not

24  placed or presented during the trial.  They are in evidence.

25  So, we responded to their note with the answer that was

170919gayle1                    Trial

1   accurate, and I believe that this accurately answers the note

2   that we have here.  So that's what I'd like to do.  I propose

3   we start at 10:45 and we run to the point at which, I guess,

4   the end of the clip is maybe 15 or 20 seconds after people flee

5   the scene.

6           THE COURT:  How long is the whole Exhibit 213?

7           MS. KELLY:  It's hours of footage, your Honor.

8           THE COURT:  So, when they say "the traffic footage,"

9   they don't know that they're asking for hours.

10          MS. KELLY:  Which is why I think to be responsive to

11  their question, your Honor, it makes sense to identify for them

12  what was played to them previously in court through Sergeant

13  Lahar's testimony and identify that to them.

14          If Mr. Braverman wants to show several minutes prior

15  to that period, we do not object to that.  It is all in

16  evidence, but I think to respond to the request, it would make

17  sense to identify what they had seen before.

18          MR. BRAVERMAN:  If the Court wants --

19          THE COURT:  I'll just tell them that the portion

20  they've seen before starts around 10:50, but --

21          MR. BRAVERMAN:  We queued it up a few minutes early.

22          THE COURT:  -- but the lawyers have agreed to play it

23  starting at 10:45.

24          MR. BRAVERMAN:  Right.

25          THE COURT:  And they can wake up --

170919gayle1                    Trial

1          MS. KELLY:  It's 10:50:45, that was where we started

2    the clip --

3          THE COURT:  Say that again.

4          MS. KELLY:  10:50:45.

5          THE COURT:  And you want to start almost six minutes

6    earlier?

7          MR. BRAVERMAN:  Approximately; correct.

8          THE COURT:  Okay, if you're in agreement -- it doesn't

9    seem like that's what they're asking for, but who am I to mess

10   with an agreement between the lawyers?

11         MS. COMEY:  Your Honor, another way to deal with this

12   might be to ask them for clarification of which portion of the

13   traffic footage they like.  Perhaps if they knew that it was

14   hours long, they might be able to narrow the time frame that

15   they're requesting to see.

16         THE COURT:  It's obvious they're asking to see what

17   they've already seen.

18         MR. BRAVERMAN:  The last --

19         THE COURT:  I'll just tell them one side wanted you to

20   see the six minutes prior, and the other side didn't object, so

21   we're going to play from 10:45, but the portion that they've

22   already seen begins at 10:50:45.  And we'll all kill five

23   minutes of our lives.  It's not a lot of time.

24         MR. BRAVERMAN:  I won't take the bait, Judge.

25         I think it's simple enough to say we've queued it up a

170919gayle1                    Trial

1   few minutes early, and you can watch the video tape.  I think

2   that's sufficient for these purposes.

3         THE COURT:  Well, I want to tell them what we're doing

4   because if they say, No, no, no, we don't want that, then I

5   won't do it.

6         MR. BRAVERMAN:  Well --

7         THE COURT:  I won't tell them which side wanted the

8   extra, but that they're getting the extra.  And then if they

9   say, No, we don't want it, I will follow their lead.

10        And if they say, Okay, then I will follow their lead.

11        MR. BRAVERMAN:  Are you going to propose it to a

12  question of whether or not they should reject the evidence

13  before they see it?

14        THE COURT:  What?

15        MR. BRAVERMAN:  Are you going to propose to them that

16  they should reject seeing something before they actually see

17  it?

18        THE COURT:  No.  I'm just going to tell them what

19  we've agreed to do.  But if they spontaneously say, No, we

20  don't want those five minutes, we just want the part we've

21  already seen, then I'm going to honor their wishes.

22        MR. BRAVERMAN:  Why don't we just say we've queued it

23  up a few minutes early from what you saw in court.  I think

24  that's sufficient and answers the question, and I don't think

25  anything more is required.

170919gayle1                    Trial

1           MS. KELLY:  Again, your Honor, we would ask that the

2     time be identified so that it's not confusing to the jury as

3     compared to what they did see in court, which I assume is what

4     they're expecting to see now.

5           THE COURT:  Yes.  I will make it clear that the

6     parties have agreed to queue it up beginning at 10:45, but the

7     portion that they have previously seen doesn't begin until

8     10:50:45.

9           And this is Government Exhibit 213, right?

10          MS. COMEY:  Yes, your Honor.

11          (Jury present; time noted: 10:45 a.m.)

12          THE COURT:  Good morning, ladies and gentlemen.

13          I have the note to see the traffic footage from

14    Chambers Street from the February 21, 2016 incident.  We have

15    that for you.  The parties have agreed to start it about five

16    and-a-half minutes earlier than when we started it -- when you

17    saw it during the trial, so we're going to start it at 10:45.

18    The portion that you saw during the testimony begins at

19    10:50:45.

20          You may proceed, Ms. Becker.

21          (Video played)

22          THE COURT:  So, the part you've previously seen is

23    going to start at 10:50:45.

24          Where did we stop when we played it in court?

25          MS. COMEY:  10:51:53.

170919gayle1                    Trial

1              THE COURT:  Okay.

2              (Video stopped)

3              THE COURT:  Anything else I can do for you?

4              (No response)

5              You'll let me know if there is.

6              THE FOREPERSON:  Are we able to pause when the white

7      car is out, like, the Jetta is within the frame?

8              THE COURT:  When it first comes in?

9              THE FOREPERSON:  Yes.

10             THE COURT:  Back at 10: --

11             THE FOREPERSON:  Around 10:50.

12             THE COURT:  Sure.  We can also play it -- we

13     originally played it, I think it was at 1/8 speed or something?

14             MS. KELLY:  We had it up 1/8 speed, your Honor.

15             THE COURT:  Why don't we do that.  And then, if that

16     doesn't answer your question, we can try to pause it for you.

17             Do you want to see the whole thing or you just want to

18     start at 10:50:45?

19             THE FOREPERSON:  10:50.

20             THE COURT:  Just when the Jetta comes in, or what the

21     government has argued is the Jetta.

22             (Video played)

23             (Video stopped)

24             THE COURT:  Anything more?

25             THE FOREPERSON:  I think we're okay.

170919gayle1                    Trial

1          THE COURT:  Okay.  You may continue with your

2   deliberations.

3          THE FOREPERSON:  Thank you.

4          (Jury deliberations resumed; time noted:  11:03 a.m.)

5          THE COURT:  Alice, you told them we'll be offline from

6   1:00 to 2:00.

7          THE CLERK:  I will bring them three sets of menus.

8          THE COURT:  Alice will tell them when she brings them

9   their menus that we'll be less available between 1:00 and 2:00.

10          If we do get a note, I will be happy to depart from my

11   meeting and we'll call you.  But if you're out getting a

12   sandwich or whatever, then it will take you a few minutes to

13   get back.

14          So, if we don't hear anything more from them at 1:00,

15   you can go get something to eat, and we'll keep you posted.

16          MS. COMEY:  Thank you, your Honor.

17          MR. BRAVERMAN:  Thank you.

18          (Recess pending verdict)

19          (In open court; jury not present)

20          THE COURT:  Court Exhibit 7, the jury reached a

21   verdict.

22          Let me remind everybody, there is to be no visible

23   reaction to the verdict or audible.

24          (Jury present; time noted: 2:01 p.m.)

25          THE CLERK:  Please stand.

170919gayle1                    Trial

1           Has the jury agreed upon a verdict?

2           THE FOREPERSON:  Yes.

3           THE CLERK:  Count One, RICO conspiracy.  Please

4    indicate your verdict on Count One.

5           THE FOREPERSON:  Guilty.

6           THE CLERK:  Please mark which types of predicate

7    crimes, if any, were committed or intended to be committed as

8    part of the racketeering conspiracy in Count One.

9           Racketeering Predicate One, acts involving murder,

10   including conspiracy to murder, attempted murder, or aiding and

11   abetting attempted the murder, in violation of New York State

12   Penal Law?

13          THE FOREPERSON:  Committed.

14          THE CLERK:  If "yes," was it one act?

15          Was it two or more acts?

16          THE FOREPERSON:  Two or more acts.

17          THE CLERK:  Racketeering Predicate Two, acts involving

18   the distribution of narcotics, possession of narcotics with

19   intent to distribute, or conspiracy to distribute and possess

20   with intent to distribute narcotics?

21          THE FOREPERSON:  Committed.  Yes, committed with

22   intent.

23          THE CLERK:  Committed, intended to be committed.

24          If "yes," was it one act?

25          Was it two or more acts?

170919gayle1                    Trial

1          THE FOREPERSON:  Two or more acts.

2          THE CLERK:  Did Count One involve crack cocaine?

3          THE FOREPERSON:  Yes.

4          THE CLERK:  Did Count One involve 280 grams or more of

5   crack cocaine?

6          THE FOREPERSON:  Yes.

7          THE CLERK:  Count Two, attempted murder in aid of

8   racketeering, December 11, 2015, shooting, how do you find?

9          THE FOREPERSON:  Guilty.

10          THE CLERK:  Count Three, assault with a dangerous

11   weapon and attempted murder in aid of racketeering,

12   February 21, 2016, shooting, how do you find?

13          THE FOREPERSON:  Guilty.

14          THE CLERK:  Count Four, narcotics distribution

15   conspiracy, how do you find?

16          THE FOREPERSON:  Guilty.

17          THE CLERK:  Please indicate the quantity that was

18   involved.

19          THE FOREPERSON:  280 grams or more.

20          THE CLERK:  Count Five, use of a minor during a drug

21   offense, how do you find?

22          THE FOREPERSON:  Guilty.

23          THE CLERK:  Count Six, Section 924(c) firearms

24   offense, relating to Counts One and Four, how do you find?

25          THE FOREPERSON:  Guilty.

170919gayle1                    Trial

1        THE CLERK:  Please indicate if you also found him

2   responsible for brandishing or discharging the firearm.

3        Brandishing?

4        THE FOREPERSON:  Yes.

5        THE CLERK:  Discharge?

6        THE FOREPERSON:  Yes.

7        THE CLERK:  Count Seven, attempted tampering with a

8   witness, how do you find?

9        THE FOREPERSON:  Guilty.

10        THE CLERK:  Thank you.  Please be seated.

11        Ladies and gentlemen of the jury, please listen to

12   your verdict as it stands recorded:

13        Count One, RICO conspiracy, you find guilty.

14        Racketeering Predicate One, you find committed or

15   intended to be committed, more than two acts.

16        THE COURT:  Two or more acts.

17        THE CLERK:  Two or more acts.

18        Racketeering Predicate Two, acts involving the

19   distribution of narcotics, possession of narcotics with intent

20   to distribute, or conspiracy to distribute and possess with

21   intent to distribute narcotics, you find committed, intended to

22   be committed.  You find two or more acts.

23        Did Count One involve crack cocaine, you find yes.

24        Due Count One involve 280 grams or more of crack

25   cocaine, you find yes.

170919gayle1                    Trial

1            Count Two, attempted murder in aid of racketeering,

2    December 11, 2015, shooting, you find guilty.

3            Count Three, assault with a dangerous weapon and

4    attempted murder in aid of racketeering, February 21, 2016,

5    shooting, you find guilty.

6            Count Four, narcotics distribution conspiracy, you

7    find guilty, 280 grams or more.

8            Count Five, use of a minor in a drug offense, you find

9    guilty.

10            Count Six, Section 924(c) firearms offense, relating

11    to Counts One and Four, you find guilty.

12            As to brandishing, you find "yes."

13            Discharge of a firearm, you find "yes."

14            Count Seven, attempted tampering with a witness, you

15    find guilty.

16            (Jury polled; each juror answered in the affirmative)

17            THE CLERK:  Jury polled and unanimous, so say you all.

18            THE COURT:  All right.  Thank you very much, ladies

19    and gentlemen, for your service.

20            You are now free to discuss the case with anyone you

21    want.  You don't have to, though.  If the lawyers or anybody

22    else wants to speak with you afterwards, it's completely up to

23    you whether you want to or not.

24            One thing you might want to consider if you do discuss

25    the case, some jurors tell me they're happy to discuss what

170919gayle1                    Trial

1   happened in court, but they don't discuss what happened in the

2   jury room; that's completely up to you.  And you can now speak

3   about the case to anyone you like.

4        If you need to get going, that's fine.  If you can

5   stick around for a couple of minutes, I just need to spend a

6   minute with the lawyers, and then I'd like to come back and

7   thank you personally for your service.  So, if you can stay in

8   the jury room, that would be great.  If you need to go, my

9   feelings won't be hurt.

10        You guys are now off the hook for jury service for at

11   least four years, at least in this building.

12        And I know I speak for everybody on this side of the

13   jury rail when I compliment you for being such an attentive and

14   conscientious jury.  It was clear to all of us that you weren't

15   phoning it in.  You were really paying attention and doing

16   exactly what we hope our jurors will do, which is listening

17   carefully to the evidence.

18        Thank you very much for your service and you are

19   discharged.  And those of you who can stick around, I'll see

20   you in a minute.

21        (Jury discharged)

22        THE COURT:  We need a date for sentencing.

23        MR. BRAVERMAN:  The first thing I would like the Court

24   to do is enlarge the time to file a post-trial motion under

25   Rule 2933, if the Court would do that.  I won't make it too

170919gayle1                     Trial

1  long.  I assume, since I have all of the transcripts, I could

2  probably have my papers in within 30 days.

3           THE COURT:  I always am unclear whether I actually

4  have the authority to extend the time for filing the motion.

5           MR. BRAVERMAN:  What I can do --

6           THE COURT:  However, I do have the authority to extend

7  the time for filing the brief.  So, why don't you file the

8  motion at whatever time the rule says.  I think it's 14 days.

9           MR. BRAVERMAN:  I'll have it done today.

10           THE COURT:  Check me on that.  But then you can file

11  the brief in 30 days.

12           MR. BRAVERMAN:  That would be great, Judge.  Thank

13  you.

14           THE COURT:  Let's see.  Today is the 19th.  So the

15  motion would be October 3, and the brief October 17.  Let's

16  make it a full 30 days.  Let's make it October 19.

17           How long would the government like to respond?

18           MS. COMEY:  Thirty days, your Honor, please.

19           THE COURT:  That will be November 17.

20           Do you want a reply, Mr. Braverman?

21           MR. BRAVERMAN:  Yes, please.

22           THE COURT:  Do you want a week?  Oh, you got

23  Thanksgiving.

24           MR. BRAVERMAN:  Could you make that two?

25           THE COURT:  Yes.  December 1.

170919gayle1                    Trial

1        MR. BRAVERMAN:  Thank you, Judge.

2        THE COURT:  And let's have sentencing maybe right

3   before Christmas.

4        MR. BRAVERMAN:  Judge, actually, one other thing is

5   that given the potential Guideline sentence that is likely to

6   be calculated by probation, I would ask the Court to authorize

7   the application for a mitigation specialist, which is going to

8   do more of an intense production for Mr. Gayle *vis-à-vis*

9   sentencing.  I do think that may take a little bit of time.  I

10  can get somebody on the case within a week.

11       THE COURT:  Do you want to go into January?

12       MR. BRAVERMAN:  If I could have maybe the second week

13  of January.

14       THE COURT:  Okay.  I think you have to make the

15  request for the additional services by the electronic system.

16       MR. BRAVERMAN:  Yes.  We'll get it done.

17       THE COURT:  The e-Voucher.

18       MR. BRAVERMAN:  Something during the week of, perhaps,

19  the 15th?

20       THE CLERK:  That's the third week.  Tuesday,

21  January 16, 10:00 a.m.

22       MR. BRAVERMAN:  Thank you.

23       THE COURT:  January 16, 10:00 a.m.

24       Anything else from counsel?

25       MS. COMEY:  No, your Honor.  Thank you.

170919gayle1                    Trial

1              THE COURT:  Well, this was a very well-tried case.

2              The government put together an overwhelming case.  I

3    don't think any defense lawyer could have done a better job

4    than Mr. Braverman did.  I don't know if I've ever seen a

5    stronger case than this one.  So, I compliment you,

6    Mr. Braverman, on your efforts, and the government's.

7              If that is all, I will see you in the middle of

8    January.

9              MR. BRAVERMAN:  Thank you, Judge.

10             MS. COMEY:  Thank you, your Honor.

11                  - - -

12   Certified to be a true and correct

13   transcript of the stenographic record

14   to the best of my ability.

15   _____

     U.S. District Court
16   Official Court Reporter

17

18

19

20

21

22

23

24

25

                 SABRINA A. D'EMIDIO - OFFICIAL COURT REPORTER
                              (914)390-4053