**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

**THE UNITED STATES OF AMERICA**

       v.                      S8 16 Cr. 361 (CS)

**TYRIN GAYLE,**
       **Defendant.**

---

# DEFENDANT'S REPLY IN SUPPORT OF A MOTION FOR A JUDGMENT OF ACQUITTAL AND FOR A NEW TRIAL

## April 25, 2018

**Calvin H. Scholar**
**The C.H. Scholar Law Firm, P.L.L.C.**
**225 Broadway-Suite 715**
**New York, New York 10007**
**(212) 323-6922 Telephone**

**Attorney for Tyrin Gayle**

**ARGUMENT**

**I. The Incredible Testimony of the Cooperators**

The defendant, Tyrin Gayle, respectfully submits this legal memorandum as a reply to the Government's opposition to the post-trial motions submitted on his behalf. The defendant's argument is simply that the cooperators undermined one another during their testimony to such an extent as to render their testimony worthless. The defense submits that each cooperator was incredible as a matter of law. Each cooperator was simply unbelievable and as a result, their testimony had no evidentiary value. The cooperators were the only witnesses to state that the defendant committed any criminal acts. Without their testimony, the remaining evidence was circumstantial evidence that supported the commission of a crime, but did not support the contention that Tyrin Gayle committed those crimes. The other evidence of criminal acts, such as the Facebook videos, supported the theory that Gayle had sold drugs, but not necessarily as part of the YTMG street gang. Without the cooperator testimony, the remaining evidence established the commission of acts that were not crimes under Federal law, such as firearm possession. The defense contends that because the cooperators were incredible as a matter of law, a judgment of acquittal should be entered on behalf of Mr. Gayle.

The defense does not suggest that the Court has to supplant the jury's assessment of credibility with its own finding as the cooperators were simply not believable and the jury was left with conflicting testimony as well as evidence that legally should not have been admitted. "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001). "Manifest injustice cannot be found simply on the basis of the trial judge's determination that certain testimony is untruthful, unless the judge is prepared to answer 'no' to the following question:

'Am I satisfied that competent, satisfactory and sufficient evidence in this record supports the jury's finding that this defendant is guilty beyond a reasonable doubt?' In making this assessment, the judge must examine the totality of the case." United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992).

The fact remains that Germain, a cooperator who testified over the course of several days, gave false testimony. The defense contends that Germain's false testimony should not be discounted lightly. The jury was instructed that they had the discretion to reject his testimony in whole or in part because of his false testimony. However, as a matter of law and equity, Germian's testimony should not be the key that locks Tyrin Gayle's fate.

After mentioning Yellow numerous times during his testimony, when asked a specific question about Yellow, Germain explicitly stated that he was just a guy from William Street (Tr. at 921). The prosecution alerted him to his false testimony and he repeated the falsehood that Yellow was just a guy from the neighborhood (Tr. at 921). The Court confronted Germain with his false testimony and Germain did not even have the decency to admit that he had just given false testimony (Tr. at 923). When confronted by the Court, Germian gave false testimony again to this Court, denying that he had ever described Yellow as just a guy from the neighborhood (Tr. at 923):

> THE COURT: Oh. I thought you said that the Yellow at the barbecue was just a guy from William Street.
>
> THE WITNESS: No, no. Excuse me.

Michael Azua's[1] testimony was undermined by Germain's testimony so as to be practically worthless. In its initial brief, the defense set forth Germain's scheme to manipulate Azua; Germain's use of kites to influence others; and the fact that Azua was willing to do

---

[1] The defense inadvertently listed Azua as "David Azua" in the post-trial legal memorandum.

2

Germain's bidding.  However, the defense would submit that there is an additional fact that further undermined Azua's worth: Azua could not identify Tyrin Gayle at trial.

During his testimony, Azua stated that he was a member of a gang affiliated with YTMG's major rival, the Southside gang (Tr. at 539).  Azua further testified that he was familiar with the "beef" between YTMG and Southside from 2014 to 2016 (Tr. at 539).  Azua stated that he was also familiar with YTMG members and was asked to shoot at their members during those two years (Tr. at 540).  Azua also showed the boundaries of YTMG's territory on a map for the jury (Tr. at 540-541).  In order to familiarize himself with the YTMG members and to keep abreast of the ongoing feud, Azua stated that he would watch Facebook videos (Tr. at 543).  However, Azua had no idea who Tyrin Gayle was despite the fact that Gayle was supposedly the leader of his friends' most hated rival.  That simply makes no sense.

The defense does not intend to repeat the initial legal memorandum or belabor the defense's contention that the cooperators were not credible.  However, even these relatively small samples of the trial testimony show that the jury was forced to overlook glaring deficiencies in the trial evidence because Gayle must have been "probably guilty."  The Court of Appeals for the Second Circuit has noted that "specious inferences are not indulged because it would not satisfy the Constitution to have a jury determine that the defendant is probably guilty." United States v. Lorenzo, 534 F.3d 153, 159 (2d Cir. 2008).

## II.  The Government Lacked Evidence that Established Guilt

The defense contends that no rational trier of fact could have used the testimony of the three cooperators to find guilt in the instant case because of the repeated instances of false

testimony that they provided. The remaining evidence did not connect Tyrin Gayle to the instant crimes.

A major part of the trial was consumed by evidence regarding a white car. The emphasis that was placed on the speculation or "hunch" of local law enforcement that Tyrin Gayle was the operator of a white car that was involved in a shooting was an example of the type of material that was portrayed as evidence for the jury. However, there was no other admissible evidence that supported the theory that Tyrin Gayle operated a white vehicle that was involved in a shooting. The Government introduced a black and white video of a vehicle that was supposedly white. The police testified that they observed a white vehicle at the defendant's home. However, there were no photographs of this vehicle at Gayle's residence; there was no evidence that Gayle was present as the police searched the house immediately upon finding a white vehicle warm to the touch; and there was no evidence that the police did anything to process the vehicle (Tr. at 1163-1165). Therefore, there was absolutely no evidence that Gayle operated the vehicle in the video.

There was evidence that the police were desperate to convict Gayle and that was the evidence communicated to the jury. Those inferences based on mere speculation were what convicted Tyrin Gayle in the instant case. The Court in United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992) articulated the question a Court must answer when reviewing a motion for a new trial: "[a]m I satisfied that competent, satisfactory and sufficient evidence in this record supports the jury's finding that this defendant is guilty beyond a reasonable doubt?" The defense appeals to this Court to answer that question in the negative.

### III. The Testimony Regarding Exhibits 500, 501, and 502 was Inadmissible Pursuant to Federal Rules of Evidence 701 and 702

In providing testimony as to whether a specific number was detected on a cellular telephone, Enrique Santos was called to testify by the Government. Although he was solely called to testify regarding a program that took data from one device and placed that data on another, Santos further testified to the following (Tr. at 1253):

> If two phones were to have the same IMEI number, they couldn't both operate on the network. Because the network uses that number to bill whoever -- or to associate a phone to an account and then, in turn, bill that person. So if a person hasn't paid their phone bill, the phone's not going to work on their -- on that specific network.

The Government then asked Santos if cellular telephones could be altered and Santos testified to the following (Tr. at 1254):

> It's designed that way. It's -- it's -- it's designed to be unique for the purposes that I mentioned before, so they can operate on the cell phone network and you can be uniquely identified. So there's no -- cell phone companies specifically don't want users to access the IMEI number for that reason. And also because cell phones, when they get stolen, the IMEI number gets reported to cell phone companies and cell phone companies blacklist that number. So it's a way to desensitize the stealing of phones and then activating them by a person that isn't supposed to be activating it.

The defense contends that Santos' testimony went well beyond the testimony of a lay witness and therefore, he should have been offered as an expert pursuant to Fed. R. Evid. 702. Under Fed. R. Evid. 702, the proponent must establish that admissibility requirements are met. Bourjaily v. United States, 483 U.S. 171 (1987). Without the testimony provided above, the Government would not have been able to establish that the cellular telephone extraction was securely preserved. The defense submits that Santos did not appear to have the expertise to provide the testimony listed above and there was no basis provided for his conclusions regarding how cellular telephone companies operate.

The United States Court of Appeals for the Second Circuit has held that Fed. R. Evid. 701 does "not permit a law enforcement agent to testify to an opinion so based and formed if the

5

agent's reasoning process depended, in whole or in part, on [the agent's] specialized training and experience." United States v. Haynes, 729 F.3d 178, 195 (2d Cir. 2013). Haynes is directly on point and applicable to the instant case. In Haynes, the Government called an officer to provide testimony to establish a causal link that was otherwise absent in the evidence. The Court in Haynes held that the "Officer…did more than simply describe what he found in the gas tank and what he perceived. He described how the float on the outside of the gas tank worked and why the gas gauge would have registered zero to empty while the drugs were in the gas tank. As the Government concedes, this testimony was based on knowledge that Officer Rabideau acquired inspecting other cars at the border. That he did not attend "mechanic school" does not render his testimony admissible under Federal Rule of Evidence 701. Officer Rabideau acquired his knowledge of how a fuel tank operates through his experience as a border agent inspecting vehicles, not through the reasoning processes of the average person. Therefore, the admission of this testimony was error." Id.

Clearly, the Government should have offered Santos as an expert in the instant case. However, he might not have been able to establish that he possessed sufficient training or expertise to testify that the extraction was securely preserved. The defense submits that the error in allowing his testimony was not limited to the jury hearing a guess about cell phone billing practices. Santos' testimony provided the last link in the chain of custody which allowed the Government to admit the contents of the cellular telephone and the summary charts. The admission of that evidence prejudiced the defendant at trial. The combination of the cell phone evidence, the impermissible leading questions, and the overload of impermissible inferences and false testimony forced the jury to decide the case on speculation or suspicion. For the

6

aforementioned reasons, the defense respectfully requests that the Court grant the post trial motion for acquittal or grant a new trial.

DATED:   New York, New York
         April 25, 2018

                                    Respectfully submitted,

                            By:    /s/ Calvin H. Scholar
                                   Attorney for Tyrin Gayle
                                   The C.H. Scholar Law Firm, P.L.L.C.
                                   225 Broadway-Suite 715
                                   New York, New York 10007
                                   Telephone: (212) 323-6922
                                   Facsimile: (212) 323-6923

TO:

The Honorable Cathy Seibel
United States District Judge
United States District Court
Southern District of New York
300 Quarropas Street
White Plains, New York 10601

AUSA Maureen Comey
AUSA Lauren Schorr
AUSA Jacqueline Kelly
United States Attorney
300 Quarropas Street
White Plains, New York 10601