UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRIN GAYLE,

                     Petitioner,

        v.

UNITED STATES OF AMERICA,

                     Respondent.

20 Civ. 10086 (CS)
16 Cr. 361 (CS)

# MEMORANDUM OF LAW IN OPPOSITION TO TYRIN GAYLE'S PETITION PURSUANT TO 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Maurene Comey
Jacqueline Kelly
Assistant United States Attorneys
   *Of Counsel*

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to Tyrin Gayle's *pro se* petition to vacate, set aside, or correct his sentence (the "Petition"). In a legal memorandum in support of the Petition ("Gayle Mem."), Gayle argues that in light of the Supreme Court's decision in *United States v. Davis*, 139 S.Ct. 2319 (2019), his ten-year consecutive sentence on Count Six violated his due process rights. Specifically, Gayle argues that as to Count Six, which charged him with a violation of 18 U.S.C. § 924(c) based on his participation in the racketeering conspiracy charged in Count One and the narcotics conspiracy charged in Count Four, the Court improperly failed to instruct the jury to determine which underlying offense served as the predicate offense for conviction. (Gayle Mem. 3). Gayle argues that consequently, he was convicted by a non-unanimous jury verdict and that he was prejudiced by that verdict because the racketeering conspiracy can no longer serve as a predicate offense under *United States v. Davis*, 139 S.Ct. 2319 (2019). (*Id.*).

The Court should dismiss the Petition because the *Davis*-related claim was procedurally defaulted when Gayle failed to raise it in his direct appeal. But as set forth below, even if the Court considers the argument, it should be rejected. The Government does not dispute that the jury's verdict on Count Six cannot be lawfully predicated on the racketeering offense charged in Count One. However, the Court should deny the Petition because as the Court previously determined at sentencing, there was no possibility that the jury's verdict rested only on the racketeering conspiracy as the evidence at trial pertaining to that count was inextricably

intertwined with the evidence of the defendant's participation in the narcotics conspiracy, which remains a valid predicate offense.

## PROCEDURAL BACKGROUND

On July 26, 2017, Gayle was charged with seven counts in Indictment S8 16 Cr. 361 (CS) (the "Indictment"), in connection with his participation in the Yellow Tape Money Gang ("YTMG"), which operated in the City of Newburgh from about 2015 through in or about May 2016. Count One charged Gayle with participating in a racketeering conspiracy from in or about 2015 through in or about May 2016, in violation of 18 U.S.C. § 1962. Count Two charged Gayle with aiding and abetting an attempted murder in aid of racketeering on or about December 11, 2015, in violation of 18 U.S.C. §§ 1959(a)(5) and 2. Count Three charged Gayle with aiding and abetting an assault and attempted murder in aid of racketeering on or about February 21, 2016, in violation of 18 U.S.C. §§ 1959(a)(3), 1959(a)(5), and 2. Count Four charged Gayle with participating in a conspiracy to distribute 280 grams or more of crack cocaine from in or about 2015 through in or about May 2016, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A). Count Five charged Gayle with using a minor in furtherance of a drug trafficking crime from in or about 2015 through in or about May 2016, in violation of 21 U.S.C. § 861(a)(1). Count Six charged Gayle with using and carrying firearms during and in relation to, and possessing firearms in furtherance of, the racketeering conspiracy charged in Count One and the narcotics conspiracy charged in Count Four, some of which firearms were brandished and discharged, and aiding and abetting the same, from in or about 2015 through in or about May 2016, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), (iii), and 2. Count Seven charged Gayle

with attempting to obstruct justice in or about 2017, in violation of 18 U.S.C. §§ 1512(c)(2) and 2.

Trial commenced on September 5, 2017 and ended on September 19, 2017, when Gayle was convicted on all counts.  On August 27, 2018, the Court sentenced Gayle to thirty years' imprisonment, to be followed by five years' supervised release, and imposed a $700 mandatory special assessment.

Gayle appealed the judgment of conviction to the Second Circuit.  On appeal, Gayle argued that the evidence was insufficient to convict on Count Five and Count Six, and that the District Court's sentence was procedurally unreasonable because the calculation of the Sentencing Guidelines included an enhancement for Gayle's role as the leader of YTMG.  On or about December 19, 2019, his appeal was denied.  The mandate of the Second Circuit dismissing the appeal was issued on or about March 11, 2020.

On or about November 23, 2020, Gayle filed the instant Petition.    Gayle is serving his sentence.  His prospective release date, according to the Bureau of Prisons, is January 20, 2042.

## STATEMENT OF FACTS

The Government presumes the Court's familiarity with the underlying facts, which are set forth here in summary.  The evidence at trial established that Gayle was the leader and founder of YTMG.  (Tr. 156-57, 163, 767-71).  The gang's name, which Gayle came up with, reflected the gang's two core goals: first, to make money by selling drugs, and second, to protect their money by shooting anyone who crossed the gang, thereby requiring the police to put yellow tape around the resulting crime scene. (Tr. 160, 771-72).

3

YTMG controlled an area used for drug trafficking near the intersection of William Street and Hasbrouck Street in the City of Newburgh, New York. (Tr. 160-62, 772, 776). Members of YTMG, including Gayle, sold multiple grams of crack cocaine in their territory nearly every day between 2015 and the spring of 2016. (Tr. 166-69, 173-74, 186, 189, 851-57, 863-67). Members of YTMG helped each other sell drugs by supplying each other with drugs, driving each other to sell drugs to customers, sharing customers, and acting as lookouts for each other. (Tr. 190-91, 874-75). During the course of the charged conspiracy, Gayle distributed more than 280 grams of crack cocaine within YTMG's territory and provided a 17-year-old YTMG member with crack to distribute.

Gayle and other YTMG members carried guns to protect their drug territory. (Tr. 200, 879). YTMG members all had access to numerous shared handguns, which were kept either in stash locations in the gang's drug territory or on their persons. (Tr. 200, 207-08, 879-83, 894-97). In addition, on several occasions, YTMG members fired guns at rival gang members as part of a violent, drug-related rivalry with a gang called "Southside," which controlled territory near the intersection of South Street and Chambers Street in Newburgh. (Tr. 164, 773-74).

During the course of that rivalry, members of Southside came into YTMG's drug territory and shot at YTMG members. (Tr. 896, 933-43). In order to protect their territory, enhance their reputations, and deter Southside members from carrying out further attacks, YTMG members carried out several shootings targeting Southside and its territory. (Tr. 209, 214, 232). Gayle participated in multiple shootings, including two charged as violent acts of racketeering: a shooting on December 11, 2015, planned and directed by Gayle, that injured

Gayle and two of his co-defendants when the car they were driving crashed, (Tr. 44-46, 49-53, 223-27, 549-55, 596, 907-11, 1103-06) and a February 21, 2016 shooting that injured an innocent bystander, (Tr. 215-17, 743-46, 916-20).  The evidence at trial also established that Gayle personally fired guns at Southside members on multiple occasions.  For example, in or around March 2016, a Southside member drove into YTMG's drug territory, and in response Gayle first directed a younger YTMG member to shoot at the car using a handgun. (Tr. 920-30).  When the younger gang member hesitated, Gayle took the handgun for himself and shot at the car. (Tr. 930-32).  Later that same month, Southside members drove into territory where YTMG members were selling drugs and opened fire. (Tr. 933-40).  In response, multiple YTMG members, including Gayle, pulled out guns and returned fire.  (Tr. 940-43).

      The Court described the Government's case at trial as "overwhelming," noting that "I don't know if I've ever seen a stronger case than this one." (Tr. 1629).  That evidence included testimony from two cooperating witnesses—Laquan Falls and Brendan Germaine—who were members of YTMG; testimony from an additional cooperating witness who was an associate of a rival gang; testimony from law enforcement witnesses who responded to the scenes of two of YTMG's shootings; testimony and video recordings concerning controlled purchases of crack cocaine from Gayle; firearms, ammunition, and narcotics seized from YTMG members; numerous social media posts by YTMG members; crime scene photographs; surveillance video; text messages from Gayle's cellphones; and the letters and affidavit that Gayle sent to a cooperating witness that formed the basis of the obstruction charge.

5

## LEGAL STANDARD

A prisoner may move to vacate, set aside, or correct his sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). However, "[h]abeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quotation marks and citation omitted); *United States v. Frady*, 456 U.S. 152, 165 (1982) ("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Section 2255 allows a petitioner to seek relief within one year from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). Gayle's application is timely.

## ANALYSIS

### I. Gayle's Claim was Procedurally Defaulted

Gayle's *Davis* claim was procedurally defaulted because Gayle failed to raise the claim on direct appeal. Beyond a cursory reference to "ineffective assistance of counsel" in the Petition, Gayle has not offered any explanation for his failure to raise the claim on direct appeal and thus cannot show cause for the procedural default. Additionally, Gayle cannot show that he was prejudiced by his procedural default based on the overwhelming evidence in the record that his Section 924(c) conviction was based on both a racketeering conspiracy and a narcotics conspiracy. As a result, the claim is procedurally barred and should be denied.

### A. Applicable Law

A court may not consider on a Section 2255 motion a claim that could have been raised, but was not raised, on direct review. Such a claim has been "procedurally defaulted." *Bousley*, 523 U.S. at 622; *United States v. Thorn*, 659 F.3d 227, 231 (2d Cir. 2011) ("In general, a defendant is barred from collaterally challenging a conviction under § 2255 on a ground that he failed to raise on direct appeal."). When a convicted defendant seeks collateral relief based on a claim he has procedurally defaulted by failing to raise it at trial, sentencing, or on direct appeal, he generally must show both cause excusing his procedural default and prejudice resulting from the errors of which he complains. *Bousley*, 523 U.S. at 622 (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)); *see also Frady*, 456 U.S. at 167-68. If the defendant cannot show both cause and prejudice, the court may consider his claim only if he establishes that he is "actually innocent." *Bousley*, 523 U.S. at 624.

The "cause" requirement means that a defendant "was impeded by some objective factor external to the defense, such as governmental interference or the reasonable unavailability of the factual basis for the claim." *McCleskey*, 499 U.S. at 468. If the defendant attempts to show cause by arguing that his claim was not legally possible at the time of conviction, the claim must be "so novel that its legal basis is not reasonably available to counsel." *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)); *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (a change in law may constitute cause if there is "a showing that the factual or legal basis for a claim was not reasonably available to counsel" at the time). Alternatively, the cause requirement can be met by a showing of futility, such as if "prior state case law has consistently rejected a particular constitutional claim." *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006). However, futility

7

does not constitute cause if a claim is merely "unacceptable" to a particular court at a particular time. *Id.* (quoting *Bousley*, 523 U.S. at 623, and *Engle v. Isaac*, 456 U.S. 107, 130 n.35 (1982)). "[T]he question is not whether subsequent legal developments have made counsel's task easier, but whether at the time of the default the claim was 'available' at all." *Thorn*, 659 F.3d 227, 233 (quoting *Smith v. Murray*, 477 U.S. 527, 537 (1986)).

"The 'prejudice' requirement is met by establishing actual prejudice resulting from the errors of which Petitioner complains." *Gutierrez v. Smith*, 702 F.3d 103, 112 (2d Cir. 2012) (quoting *Frady*, 456 U.S. at 168 and *Murray v. Carrier*, 477 U.S. 478, 494 (1986)) (internal citations and quotations omitted). "The error must have resulted in 'substantial disadvantage, infecting [the] entire trial with error of constitutional dimensions.'" *Guitierrez*, 702 F.3d at 112 (quoting *Murray*, 477 U.S. at 494).

To establish actual innocence, a defendant must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 289, 327-28 (1995)). In this context actual innocence means factual innocence, not legal insufficiency. *Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

B. **Discussion**

Gayle's claim is procedurally defaulted because he has failed to show either cause or prejudice. Gayle's legal memorandum offers no explanation for his failure to raise his *Davis* claim on direct appeal. And although the Petition form attaching the legal memorandum states that the claim was not raised on direct appeal because of "ineffective assistance of counsel," Gayle offers no detail or context for that bare assertion. Indeed, Gayle had different representation in pretrial

8

proceedings, at trial, at sentencing, and on direct appeal but does not specify which of his defense counsel was purportedly deficient by failing to make this claim below. Assuming that Gayle intends to assert that his appellate counsel was deficient, Gayle offers no specific explanation or context for that assertion. Setting aside Gayle's bald assertion of ineffective assistance, Gayle cannot show cause because the *Davis* claim raised in the Petition was indisputably previously available to him. Indeed, Gayle's counsel at sentencing, Calvin Scholar, Esq., raised essentially the same constitutional argument at sentencing. (Sent'g Tr. 26). Therefore, Gayle cannot show that his claim is "so novel that its legal basis [was] not reasonably available to counsel" on direct appeal. *Bousley*, 523 U.S. at 622. *See also United States v. Thorn*, 659 F.3d 277, 233 (2d Cir. 2011) (explaining that claim was available when "a number of defense attorneys" had raised similar arguments in various contexts at the time of the direct appeal).

Gayle also cannot establish prejudice resulting from his claim. Although Gayle's trial preceded the Supreme Court's decision in *Davis*, the Court's jury instructions on Count Six and subsequent jury verdict on Count Six, did not infect the trial "with error of constitutional dimensions." *Murray*, 477 U.S. at 494. As the Court concluded at Gayle's sentencing, there was no "real risk that the unconstitutional predicate was the basis for the conviction" because the evidence of Gayle's participation in both the racketeering and narcotics conspiracies was "inextricably intertwined" and there was no "reasonable construction of the evidence that would find that the use of a weapon related only to the racketeering and not to the narcotics." (Sent'g Tr. 26-27).

9

Finally, as established by the recitation of the evidence underlying Gayle's conviction *supra*, Gayle cannot demonstrate that he is "actually innocent" of violating Section 924(c) in light of the overwhelming evidence that he possessed firearms in furtherance of the charged narcotics conspiracy. Gayle's claim is therefore procedurally defaulted.

## II. Gayle's Claim Fails on the Merits

Gayle's claim also fails on the merits. Although the Government concedes that a Section 924(c) conviction can no longer be predicated on a racketeering conspiracy, the evidence at trial indisputably established that Gayle's possession of firearms was in furtherance of *both* the racketeering conspiracy charged in Count One and the narcotics conspiracy charged in Count Four.

### A. Applicable Law

Title 18, United States Code, Section 924(c) provides, in relevant part:

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall [be subject to certain specified punishments].

A "drug trafficking crime" is defined to include "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 et seq.)." 18 U.S.C. § 924(c)(2). "[C]rime of violence" is defined as a federal felony that either "(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3). Subparagraph (A), which focuses on the elements of the offense, is known as the "force clause"; subparagraph (B), which refers to the risk of force entailed by an offense, is known as the "risk-of-force clause" or the residual clause. *See*

10

*United States v. Hendricks*, 921 F.3d 320, 327 & n.25 (2d Cir. 2019) (citing *United States v. Hill*, 890 F.3d 51, 54 (2d Cir. 2018)).

In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court held that the residual clause of Section 924(c) is unconstitutionally vague. *Id.* at 2336. As a result, *Davis* abrogated this Court's holding in *United States v. Barrett*, 903 F.3d 166, 178 (2d Cir. 2018), *vacated and remanded*, 139 S. Ct. 2774 (2019), that a conspiracy to commit an offense that is a crime of violence under Section 924(c)(3)(A)'s force clause is itself categorically a crime of violence under Section 924(c)(3)(B). *See id.* at 176-77. In light of *Davis*, the Government does not dispute that racketeering conspiracy does not constitute a predicate "crime of violence" under 18 U.S.C. § 924(c)(3) and therefore is not a valid predicate for Gayle's Section 924(c) conviction.

To succeed on his *Davis* claim in the Petition, however, Gayle must show that the alleged error at trial had a "substantial and injurious effect or influence" on the outcome. *See Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation and internal quotation marks omitted); *see also O'Neal v. McAninch*, 513 U.S. 432, 438 (1995); *United States v. Clay*, 720 F.3d 1021, 1027 n.5 (8th Cir. 2013) (*Brecht* standard applies to collateral challenges of a federal court conviction under Section 2255).

**B.  Discussion**

As an initial matter, there is no dispute that the narcotics conspiracy of which Gayle was convicted remains a valid predicate for his Section 924(c) conviction. Gayle concedes this point, making no argument that the narcotics conspiracy was an invalid predicate. *See* Gayle Mem. 4. With that point established, Gayle cannot show that any alleged error in the jury instructions or

11

verdict form for Count Six had a "substantial and injurious effect or influence" on his conviction and sentence. *Brecht*, 507 U.S. at 637. The evidence at trial proved Gayle's guilt on Count Six based on his participation in the charged narcotics conspiracy, which was factually indistinguishable from the charged racketeering conspiracy. Both the racketeering and narcotics conspiracies involved the members of YTMG, who sold drugs in and around YTMG territory, and engaged in acts of violence to protect that same territory. Because that narcotics conspiracy was inextricably intertwined with the racketeering conspiracy, the jury's verdict of guilt on Count Six necessarily reflects a conclusion by the jury that Gayle possessed firearms in furtherance of the narcotics conspiracy.

At trial, the jury was presented with overwhelming evidence that Gayle and his co-conspirators possessed, carried, used, and discharged firearms in furtherance of the narcotics conspiracy. Falls and Germaine both testified that the gang kept guns in stash locations near the area where they sold drugs and kept them on their persons while selling drugs. (*See, e.g.*, Tr. 207-08, 894, 896-97). That testimony was supported both by evidence of controlled purchases of narcotics from Gayle in that very territory and by evidence regarding the seizure of guns and drugs from stash locations in the vicinity of that same territory. (*See, e.g*., Tr. 148-52, 400-01, 410-12, 462-510, 606, 633-35, 643-44, 714-15, 732). Furthermore, the shootings that Gayle planned and participated in with other YTMG members, including the December 11, 2015 and February 21, 2016 shootings, were in retaliation for invasions of the gang's drug turf by Southside as part of an escalating war over drug territory. (Tr. 209, 214-19, 232, 907-11, 918-20). The evidence further established that, on at least two occasions, Gayle personally fired a gun

at opposing gang members driving through the YTMG's drug territory. (Tr. 920-43). In recounting one of those shootings, Germaine specifically recalled that before the Southside car arrived, Gayle and the other YTMG members were selling drugs at that very intersection and were carrying guns on their persons when they were attacked by rivals. (Tr. 933-43).

As the Court found at sentencing, based on the evidence at trial, it was "inescapable that [the jury] must have based the 924(c) conviction on both Count One, the RICO conspiracy, and Count Four, the narcotics conspiracy." (Sent'g Tr. 24). The evidence of both counts was overlapping in all respects, including with respect to the use of firearms. Indeed, the Court pointed out that "[t]he evidence of the use of firearms in this case was all about the turf of YTMG and where it sold its drugs. The narcotics conspiracy, on the evidence here, is almost a lesser-included offense of the racketeering conspiracy." (*Id.*) The Court reasoned that the evidence on both the racketeering conspiracy and narcotics conspiracy counts was "inextricably intertwined" because "the evidence doesn't really allow for any other inference" and "the jury, in fact, found that." (*Id.*) That reasoning applies with equal force to the arguments raised in the Petition. There was simply no evidence presented at trial from which the jury could have concluded that the use and discharge of firearms related to only the racketeering conspiracy and not the narcotics conspiracy as well. Gayle's arguments regarding jury unanimity thus fall flat.

As a result, Gayle's Section 924(c) conviction remains valid because it is supported by the narcotics conspiracy predicate. *See, e.g., United States v. Walker*, 789 F. App'x 241, 244-45 (2d Cir. 2019) (rejecting *Davis* challenge because the 924(c) convictions "rested on convictions for *both* conspiracy and substantive Hobbs Act robbery"); *United States v. Vasquez*, 672 F.

13

App'x 56, 61 (2d Cir. 2016) ("Even if Hobbs Act robbery were not a categorical crime of violence, Vasquez's § 924 convictions are clearly supported by a narcotics predicate presenting no legal concern."); *Lewis v. United States*, 2020 WL 3498710, at *3 (S.D.N.Y. June 29, 2020) (rejecting *Davis* challenge on the merits because of legally sufficient proof in the plea allocution and PSR supporting the narcotics conspiracy predicate for the § 924(c) conviction); *United States v. Figueroa*, 813 F. App'x 716, 720-21 (2d Cir. 2020) (finding that superseding indictment, plea agreement, and plea allocution all demonstrated that § 924(c) conviction was predicated on both a narcotics conspiracy and a Hobbs Act robbery conspiracy).

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Petition in its entirety as procedurally defaulted, or in the alternative, on the merits.

## AFFIRMATION OF SERVICE

I, Jacqueline Kelly, affirm under penalty of perjury as follows:

1. I am an Assistant United States Attorney in the Southern District of New York.

2. On April 15, 2021, I caused a copy of the foregoing to be served on the petitioner by certified mail at the following address:

Tyrin Gayle, Reg. No. 77732-054<br>
USP Canaan<br>
U.S. Penitentiary<br>
P.O. Box 300<br>
Waymart, PA 18472

Dated: New York, New York
April 15, 2021

_____
Jacqueline Kelly
Assistant United States Attorney
(212) 637-2456